**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY,

Plaintiff,

v.

ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE,

Defendants.

CASE NO. 3:10-CV-39 (CDL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND REPORT OF JON ALBERT LEVY**[1]

Defendants respectfully submit this Memorandum of Law in support of their motion to exclude the opinions and report of Plaintiff's witness Jon Levy.

## INTRODUCTION

This case arises from Plaintiff Bogart, LLC's ("Plaintiff") allegations that three items of furniture sold by Ashley Furniture Industries, Inc. ("Ashley") infringed Bogart's trademarks and misappropriated Plaintiff's rights of publicity. Ashley's sole conduct at issue in this case is the use of "Bogart Ocean" as a product identifier label for the three items of furniture at issue. Plaintiff seeks to offer testimony from its retained damages expert, Jon Albert Levy ("Levy"), concerning damages Plaintiff allegedly suffered from Ashley's use of "Bogart Ocean."

[1] This memorandum contains discussion and quotations of confidential materials, which this Court has granted the parties leave to file under seal. [See Dkt. No. 27.] Accordingly, Defendants have redacted any discussion and quotation of confidential materials from the publically filed version of this memorandum and have contemporaneously filed an unredacted version of this memorandum under seal with the clerk of court.

The facts of this case are set forth more fully in the Memorandum of Law in Support of Ashley's Motion for Summary Judgment, filed concurrently herewith. As set forth therein, Plaintiff is an intellectual property holding company that does not make or sell any products. Plaintiff's sole source of revenue is licensing rights to certain federally registered and unregistered trademarks and rights of publicity relating to the deceased actor Humphrey Bogart. Plaintiff's business model dictates that the only damages it could possibly have sustained would be lost licensing royalties. For this reason, Levy seeks to opine on the financial terms, or proper royalty, for a hypothetical license between Plaintiff and Ashley.

Levy's report and opinions are completely devoid of any recognized damage methodology for calculating a reasonable royalty. Although the factors identified in *Georgia Pacific Corp. v. U.S. Plywood Corp.* are widely used for determining licensing rates and corresponding reasonable royalty damages, Levy completely ignores these factors. *See Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970). Levy also fails to identify or describe any competing methodology he used. Put simply, Levy's report and opinions do not apply any recognized or testable damages methodology, are *ipse dixit*, and thus, wholly unreliable and unverifiable. [*See* **Exhibit A**, [redacted] ][2] Because his opinions are unreliable and not helpful to a jury, this Court should exclude Levy's report and opinions.

[2] **Exhibit A** and **Exhibit B**, *infra*, contain materials designated as confidential by Plaintiff. Defendants have filed their Notice of Intent to File Confidential Discovery Materials identifying these materials [*See* Dkt. No. 31.]; however, Plaintiff has not yet had an opportunity to file a motion requesting leave to file these confidential materials under seal. Therefore, Defendants are not filing these exhibits at this time in order to protect any confidential information contained therein. In the event Plaintiff files a motion requesting leave to file these materials under seal and this Court grants such motion, Defendants will then file these exhibits in accordance with this Court's order.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Expert Testimony Is Not Admissible When The Methodology Used Is Unreliable Or Critical Assumptions Are Unsupported

Federal Rule of Evidence 702 governs the admission of testimony by experts, stating that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharms, Inc.*, the Supreme Court clearly stated that trial judges must exercise their "gatekeeping responsibility" to ensure that expert testimony admitted under Fed. R. Evid. 702 is "not only relevant, but reliable." 509 U.S. 579, 589 (1993). The district court's role as gatekeeper is "especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595). "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id.* (quoting FED R. EVID. 703).

The opinion testimony from a purported expert witness may be admitted only if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*Frazier*, 387 F.3d at 1260 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The burden of establishing an expert's qualifications, reliability, and helpfulness rests with the proponent of the expert's opinion. *See Dukes v. Georgia*, 428 F.Supp.2d 1298, 1310 (N.D. Ga.), *aff'd*, 212 Fed. Appx. 916 (11th Cir. 2006).

### A. Levy's Opinions and Analyses Must Be Reliable

Factors that may be considered when determining whether Levy's testimony is reliable are: (1) whether his theories or techniques can be tested; (2) whether those theories or techniques have been subject to peer review; (3) whether Levy's techniques have a known or potential rate of error; and (4) whether Levy's theories have attained general acceptance in the relevant community. *See Daubert*, 509 U.S. at 593-94. Judges are granted "'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Frazier*, 387 F.3d at 1262 (quoting *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). But in every case "what remains constant is the requirement that **the trial judge evaluate the reliability of the testimony before allowing its admission at trial.**" *Frazier*, 387 F.3d at 1262 (emphasis added). The reliability of the expert's principles and methodology must be carefully considered, because "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997). Indeed, "'[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it.'" *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee's note (2000)). "District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony

does not reach the jury" under the mantle of reliability that accompanies the appellation "expert testimony." *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

In addition to following reliable principles and methodology, an expert must "offer a meaningful explanation" as to why a certain methodology was followed. *See Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 279 (2nd Cir. 2004) (finding valuation testimony unreliable when an expert could not explain his variables and assumptions and failed to explain differences between companies); *see also Kipperman v. Onex Corp.*, 411 B.R. 805 (N.D. Ga. 2009) ("An expert must be able to explain step by step how and why he reached his given conclusions."). Further, "any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994).

**B. Levy's Opinions and Analyses Must Also Assist the Trier of Fact**

Levy's testimony and opinions are admissible only if they will assist the trier of fact. Under this requirement, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Levy's testimony "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.

**C. Background on Lanham Act Damages and Reasonable Royalties**

Generally, damages for trademark infringement under the Lanham Act may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action. *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008). Bogart has elected not to seek Ashley's profits. Instead, Bogart seeks to recover its actual damages in the form of

the amount or royalty that would have been required in a license between Bogart and Ashley for Ashley's accused conduct.

Although a reasonable royalty is a less frequently used measure of damages for trademark infringement, it has been recognized under certain circumstances as a proper measure of damages within this Circuit. *See Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-cv-2376, 2011 U.S. Dist. LEXIS 28034, at *9 (N.D. Ga. March 17, 2011) (citing *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519-1520 (11th Cir. 1990) and stating: "The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established."); *see also See Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-cv-22049, 2009 U.S. Dist. LEXIS 116770, at *28 (S.D. Fla. April 28, 2009) (citing *Boston Professional Hockey Asso. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75 (5th Cir. 1979)).

A reasonable royalty is calculated by constructing a hypothetical negotiation between the intellectual property holder / licensor and infringer / licensee. The purpose of this hypothetical negotiation is to determine "what the parties would have agreed upon, if both were reasonably trying to reach an agreement." *Georgia-Pacific*, 318 F. Supp. at 1121 (internal quotations omitted). The well-established methodology for determining reasonable royalties through a hypothetical negotiation is use of the factors identified in *Georgia Pacific*. *See Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06-cv-1446, 2011 U.S. Dist. LEXIS 142229, at *65-66 (E.D.N.Y. December 8, 2011) ("The well-settled methodology for analyzing whether a royalty damages conclusion is reasonable is the 15-factor test set forth in *Georgia-Pacific Corp*. 318 F. Supp. at 1116."); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("We have consistently upheld experts' use of a hypothetical negotiation and *Georgia-Pacific* factors for estimating a reasonable royalty."); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297,

314 (3rd Cir. 2007) ("The reasonableness of royalties is an inquiry that courts routinely undertake using the 15-factor test set forth in *Georgia-Pacific*…")

In *Georgia-Pacific*, the court set forth the following list of factors that may be pertinent to the determination of a reasonable royalty:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
>
> 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
>
> 3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
>
> 4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
>
> 5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
>
> 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
>
> 7. The duration of the patent and the term of the license.
>
> 8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
>
> 9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.
>
> 10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
>
> 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

> 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
>
> 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
>
> 14. The opinion testimony of qualified experts.
>
> 15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120. These factors are recognized as the framework or methodology for determining a reasonable royalty. As explained below, Bogart's damages expert, Levy, has no knowledge of the *Georgia Pacific* factors, did not apply these factors, and did not apply any recognized methodology at all in reaching his damages conclusion.

## II. Levy's Opinions Fail To Meet The Standards Of Admissibility Under *Daubert* And Rule 702

### A. <u>Levy's Report and Opinions on Damages are Wholly Unreliable</u>

[redacted] In his report, Levy does not identify or describe any methodology or analysis that led him to this conclusion. Instead, he improperly seeks to have the jury take his word for it. *See McClain v. Metabolife Intern., Inc.*, 401 F.3d at 1244 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it.'"). [redacted]

[redacted]

[redacted] Moreover, Levy expressly rejects any recognized methodologies or models for calculating damages. [redacted]

The reality is that recognized damages formulas and methods do exist in this case. [redacted]

[redacted]

[redacted] Levy's rejection of all methodologies, and the corresponding uncertainty that follows from his decision, renders Levy's report and opinions unreliable and inadmissible. *Nebraska Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ('[I]f the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.").

**B. <u>Levy's Purported "Analysis" of Bogart's Alleged Damages Is Inadmissible</u>**

As the court in *Lippe v. Bairnco Corp* observed, an expert must "offer a meaningful explanation" as to why he chose a particular methodology. *See Lippe*, 99 Fed. Appx. at 279 (finding valuation testimony unreliable when an expert could not explain his variables and assumptions and failed to explain differences between companies). "In most cases, '[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." *See Thomas v. Hubtex Maschinenbau GmbH & Co KG*, No. 7:06-cv-81, 2008 U.S. Dist. LEXIS 75124, at *8-9 (M.D. Ga. September 23, 2008) (citing advisory committee's notes to Fed. R. Evid. 702).

Levy's report and opinions are not grounded in any body of learning or his experience, and Levy fails to describe how his opinion is grounded in anything. Levy also fails to explain how he reached his conclusions or the basis for those conclusions. [redacted]

[redacted]

[redacted] As set forth in detail in Ashley's concurrent Motion for Summary Judgment, it is undisputed that Ashley (unlike Thomasville) did not use Humphrey Bogart's likeness, and did not attempt to draw any connection between its furniture and the actor. [redacted] As previously mentioned, Ashley's only allegedly wrongful act was including "Bogart" in the name "Bogart Ocean."

[redacted]

[redacted]

[redacted]

[redacted]

---

[3] *See, e.g.*, *Ellipse Corp. v. Ford Motor Co.*, 461 F. Supp. 1354, 1362 (N.D. Ill. 1978) ("In fixing damages on a royalty basis against an infringer, the sum allowed should be reasonable and that which would be accepted by a prudent licensee who wished to obtain a license but was not so compelled and a prudent patentee, who wished to grant a license but was not so compelled…. In substance, application of that rule, often referred to as the "willing buyer-willing seller" rule, involves a determination of the reasonable market value of a license…"); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (describing the hypothetical negotiation and stating, "The willing-buyer/willing-seller concept is . . . employed by the court as a means of arriving at reasonable compensation and its validity does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations. There is, of course, no actual willingness on either side. . . ."); *Putnam v. Henkel Consumer Adhesives, Inc*., 2007 U.S. Dist. LEXIS 96166, * 23 (N.D.Ga. Oct. 29 , 2007) ("Any negotiation, hypothetical or reality-based, requires that the parties meet in the middle of a range, below the point at which the patent holder will not license his technology and above that which the infringer will not pay for the license.")



As the foregoing demonstrates, Levy's opinions are bald conclusions that he cannot support and are not based on any methodology. Such "conclusory statements devoid of factual or analytical support [are] simply not enough" to sustain an admissible expert opinion. *See Cook ex rel. Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005) (finding that "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough."). Thus, the Court should exclude Levy's report and opinions from this action. *See Club Car, Inc. v. Club Car (Quebec) Imp., Inc.*, 362 F.3d 775 (11th Cir. 2004) (affirming exclusion of damages expert's testimony "based on flawed methodology that was unaccepted in the accounting community."); *Unleashed Magazine, Inc. v. Orange County,* No. 6:06-cv-1690, 2008 U.S. Dist. LEXIS 113383 (M.D. Fla. August 25, 2008) (excluding damages expert in trademark infringement case as unreliable); *Toffoloni v. LFP Publ. Group, LLC*, No. 1:08-cv-421, 2010 U.S. Dist. LEXIS 124733 (N.D. Ga. Nov. 23,

2010) (excluding damages expert attempting to opine on right of publicity damages due to unreliable methodology and data).

**C. Levy's Purported Experience Cannot Save His Report and Opinions**

It is anticipated that Plaintiff will argue that Levy's report and opinions should not be excluded due to his years of experience in the entertainment industry. Experience alone does not, however, make an expert's opinions reliable or admissible. As the Eleventh Circuit explained in *United States v. Frazier*, even extensive experience cannot save opinions based on unreliable data or methodologies:

> Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express. As we observed in *Quiet Technology*, "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability. . . . Our caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." 326 F.3d at 1341-42. Quite simply, under Rule 702, the reliability criterion remains a discrete, independent, and important requirement for admissibility.
>
> Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis added); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.* (on remand), 43 F.3d 1311, 1316 (9th Cir. 1995) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough"). If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.
>
> Thus, it remains a basic foundation for admissibility that "proposed [expert] testimony must be supported by appropriate validation -- [i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795. As the Supreme Court put it, "the Rules of Evidence -- especially Rule 702 -- . . . assign to the trial judge the task of ensuring that an expert's testimony . . . rests on a reliable foundation." Id. at 597, 113 S. Ct. at 2799.

*See Frazier*, 387 F.3d at 1261.

Levy's experience cannot save his opinions in this case. [redacted]

**CONCLUSION**

Based on the foregoing arguments and authorities, Ashley respectfully submits that Levy's report and opinions are unreliable, will not assist the trier of fact, fail to meet the admissibility standard announced in *Daubert*, and Levy's reports and opinions should be excluded under Federal Rule of Evidence 702.

Dated this 1st day of March, 2012.

/s/ Matthew L. Jamison
Charles A. Burke, Esq. (admitted *pro hac vice*)
Robert D. Mason, Jr. Esq. (admitted *pro hac vice*)
Matthew L. Jamison, Esq. (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
cburke@wcsr.com
rmason@wcsr.com
mjamison@wcsr.com

*Attorneys for Defendants Ashley Furniture Industries, Inc. (d/b/a Ashley Furniture) and Ashley Furniture HomeStore*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:10-CV-39 (CDL) |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINION AND REPORTS OF JON ALBERT LEVY was electronically filed on this 1st day of March, 2012 with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Additionally, an unredacted version of the foregoing has been served via email upon all attorneys of record, including:

Michael O. Crain
CRAIN LAW GROUP, LLC
297 Prince Avenue
Suite 24
Athens, GA 30601
mocrain@crainlawgroup.com

Cash Vandiver Morris
MAYER & HARPER, LLP
127 Peachtree Street, NE
Suite 1100
Atlanta, GA 30303
cmorris@mayerharper.com

/s/ Matthew L. Jamison
Matthew L. Jamison (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3510
Facsimile: (336) 726-6902
mjamison@wcsr.com