**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | |
|---|---|
| BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>      Defendants. | CASE NO. 3:10-CV-39 (CDL) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**

---

[1] This memorandum contains discussion and quotations of confidential materials, which this Court has granted the parties leave to file under seal [See Dkt. No. 27.], as well as materials for which leave has not yet been granted.  Accordingly, Defendants have redacted any discussion and quotation of confidential materials from the publically filed version of this memorandum and have contemporaneously filed an unredacted version of this memorandum under seal with the clerk of court.

# Table of Contents

Page

I. INTRODUCTION ................................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................................... 2

   A. Ashley Furniture ................................................................................................................ 3

   B. The "Bogart Ocean" Product Identifier ......................................................................... 3

   C. The Plaintiff ...................................................................................................................... 4

   D. "Bogart Ocean" Had No Affiliation with Humphrey Bogart .......................................... 5

   E. "Bogart Ocean" Was Never Seen by Most Customers, and Was Never Used as a Brand Name ................................................................................................................................ 6

   F. There is No Evidence of Any Likelihood of Confusion .................................................... 7

III. ARGUMENT AND AUTHORITY ......................................................................................... 7

   A. Plaintiff Cannot Prevail on Lanham Act Claims Because There Is No Likelihood of Confusion As A Matter Of Law ....................................................................................... 8

      1. Plaintiff Has No Evidence of Actual Confusion ...................................................... 9

      2. The Bogart Marks Are Weak And Entitled To Limited Protection at Best ............... 12

      3. Ashley's Usage Is Not Confusingly Similar To The Bogart Marks .......................... 15

      4. There Is No Similarity of Products, Sales, or Advertising ...................................... 17

      5. There Is No Evidence of Wrongful Intent ................................................................ 20

   B. Plaintiff's State Law Claims of Unfair Competition and Deceptive Trade Practices Fail Alongside the Lanham Act Claims ................................................................................... 22

   C. Plaintiff is Entitled to Summary Judgment on Plaintiff's Right of Publicity Claims ....... 22

      1. Plaintiff's Right of Publicity Claims Are Duplicative Of The False Endorsement Claims Under The Lanham Act ................................................................................ 22

      2. The Claims Asserted Under Washington And Georgia Law Are Inapplicable In This Case ......... 24

      3. Plaintiff Fails To State A Claim Under CALIFORNIA CIVIL CODE § 3344.1 ................. 25

      4. In Any Event, Damages Under Section 3344.1 Are Limited to California Sales ........... 26

   D. Ashley Is Entitled To Summary Judgment On Plaintiff's Damages Claims .................... 27

**E.**      **Plaintiff is Entitled to Summary Judgment on Plaintiff's Claims for Punitive and Exceptional Damages** ...................................................................................................28

**IV.**         **CONCLUSION**.............................................................................................................**30**

**<u>CERTIFICATE OF SERVICE</u>** ................................................................................................**32**

In support of their motion for summary judgment, defendants respectfully submit the following.

## I.  __INTRODUCTION__

This is an action for alleged infringement of claimed trademark and publicity rights relating to the deceased actor Humphrey Bogart.  Defendant Ashley Furniture Industries, Inc. ("Ashley") is alleged to have suggested to consumers that Humphrey Bogart sponsored or endorsed three of Ashley's upholstery products which were sometimes referred to as "Bogart Ocean."  As set forth more fully below,  Ashley is entitled to summary judgment on all claims for at least the following four reasons.  First, there is no evidence of the required element of likelihood of confusion in this case.   In particular, there is no instance in which anyone was ever confused between "Bogart Ocean" and Plaintiff or Humphrey Bogart, and Plaintiff has not submitted any survey to test the possibility of likelihood of confusion.  Surveys and evidence of actual confusion are the typical manner in which trademark infringement is proven, and the complete absence of such evidence in this case creates a strong presumption against any likelihood of confusion.  Second, Ashley never intended for "Bogart Ocean" furniture to have any relationship to Humphrey Bogart.   To the contrary, the first word "Bogart" was named after the city of Bogart, GA, a fact that can be proven because various other products introduced at the same time were all also named after cities, including one which was named after another city in Georgia.  Third, Ashley never undertook any effort to create an association between "Bogart Ocean" furniture and Humphrey Bogart.  For example, Ashley never referenced the name "Humphrey," never used a picture or any type of likeness of Humphrey Bogart, and never referenced the life, movies, or persona of Humphrey Bogart.  Fourth, Ashley never used "Bogart Ocean" as any type of brand name or source identifier to consumers.  To the contrary, the term

1

"Bogart Ocean" was an internal product identifier that was used internally by Ashley employees similar to the manner in which a numeric "sku" or barcode is used to track inventory and sales. There were only a few limited instances in which Ashley customers could have even known of the "Bogart Ocean" name since its use was to a large degree limited to employees and internal company business.   All of these facts are undisputed, and entitle Ashley to summary judgment in this case.

Alternatively, if this Court permits Plaintiff to proceed on one or more of its claims despite the foregoing, then Ashley moves for summary judgment excluding or limiting various aspects of Plaintiff's damages claims.  Specifically, Ashley seeks summary judgment excluding Plaintiff's claims for monetary, punitive, and exemplary damages, on grounds that Plaintiff has no evidence to support any of these damage claims.  Moreover, to the extent that any right of publicity claim for monetary damages may be allowed, Ashley alternatively moves to limit those damages to only those amounts that arise from product sales in California, the state of Humphrey Bogart's residence at the time of his death.

## II.   STATEMENT OF FACTS

Pursuant to Local Rule 56, Ashley is submitting as Exhibit C[2] to this Memorandum a statement of the undisputed facts which entitle Ashley to judgment as a matter of law.  Ashley also provides the Court with the following summary of the undisputed facts in this case.

---

[2]   **Exhibit C** contains materials designated as confidential by Plaintiff.  Defendants have filed their Notice of Intent to File Confidential Discovery Materials identifying these materials [See Dkt. No. 31.]; however, Plaintiff has not yet had an opportunity to file a motion requesting leave to file these confidential materials under seal.  Accordingly, Defendants have redacted any discussion and quotation of confidential materials from the publically filed version of this memorandum and have contemporaneously filed an unredacted version of this memorandum under seal with the clerk of court.

A.    ASHLEY FURNITURE

Defendant Ashley is a privately owned furniture company.  Ashley distributes home furnishing products in all fifty states and worldwide. Ashley sells home furnishings, primarily furniture, through two channels: (1) several thousand independent third-party furniture dealers, and (2) more than 400 Ashley Furniture HomeStore retail furniture stores, most of which are independently owned and operated.  Declaration of Kerry Lebensburger (Exhibit A hereto), ¶ 2.

Ashley uses four primary brand names to identify and promote its products – "Ashley Furniture," "Ashley," "Ashley Furniture HomeStore," and "Millennium by Ashley Furniture." These are brand names owned by Ashley.  Ashley does not license third party names or brands to sell its products.  Ashley also does not utilize any type of celebrity endorsements to sell its products.  Ex A, ¶ 3.

B.    THE "BOGART OCEAN" PRODUCT IDENTIFIER

For internal accounting and sales reporting purposes, all Ashley products have two different product identifier labels.  These labels are used to reference Ashley's products and to track product sales, delivery, etc.  The first label used is a number usually composed of seven digits.  The second label used is composed of two words.  The first word is typically the name of a city, park, river, or other publically known term.  The second word typically refers to the color of the product.  Over the years, Ashley has had several thousand such non-numeric product identifier labels.  Some current examples of product identifier labels for upholstery products include Allendale Mist, Frontier Canyon, and Burlington Sienna, to name just a few.  Ex. A, ¶ 4; Declaration of Lisa Adair (Exhibit B hereto), ¶ 2.

In late 2008, Ashley introduced three pieces of affordable, blue, motion upholstery.  This product was sold in both Ashley Furniture HomeStores and in other independent furniture retailers.  This product had the numeric product identifiers 8000029, 8000048, 8000049, and it

had the non-numeric product identifier "Bogart Ocean."  When a non-numeric product identifier was used by Ashley with this motion furniture, it was consistently referred to with both words "Bogart" and "Ocean."  Neither the word "Bogart" or "Ocean" was ever used standing along to reference this product.  Ex. A, ¶ 5.

The use of a product identifier such as "Bogart Ocean" is necessary for Ashley employees to distinguish in conversation between very similar items of furniture.  For example, the style of "Bogart Ocean" upholstery was indistinguishable from several of Ashley's other overstuffed, contemporary sectional sofas and recliners sold at the same time.  The type and color of the upholstery fabric is really the only distinction between "Bogart Ocean" and similar Ashley products such as Amazon Mocha, Durapella Cocoa, Hogan Mocha, Darcy Cafe, Kellum Chocolate, Rebel Sage, and Renegade Stone. The "Bogart Ocean" product identifier was used to distinguish the blue woven fabric upholstery in this product from these other similar configurations.  Ex. A, ¶ 6.

**C.      THE PLAINTIFF**

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

---

[3] **Exhibits E** and **Exhibit F**, *infra*, contain materials designated as confidential by Plaintiff. Defendants have filed their Notice of Intent to File Confidential Discovery Materials identifying these materials [See Dkt. No. 31.]; however, Plaintiff has not yet had an opportunity to file a motion requesting leave to file these confidential materials under seal. Therefore, Defendants are not filing these exhibits at this time in order to protect any confidential information contained therein.  In the event Plaintiff files a motion requesting leave to file these materials under seal



The pieces sold in Thomasville's Humphrey Bogart collection are very different from the Ashley's "Bogart Ocean" product.  The Humphrey Bogart line sold by Thomasville was composed of high-end and expensive wood furniture with a highly customized and unique design that evoked the time period of Humphrey Bogart's movies.  In contrast, the three "Bogart Ocean" items were very inexpensive overstuffed upholstery that is clearly contemporary in style and design. Ex. A, ¶¶ 15-16.

"Bogart Ocean" furniture was never a successful selling product.  It was discontinued after one year due to disappointing sales levels.  Id., ¶ 16.  Plaintiff never complained about the product until long after it was discontinued.

### D.    "BOGART OCEAN" HAD NO AFFILIATION WITH HUMPHREY BOGART

The naming and sale of "Bogart Ocean" furniture had nothing whatsoever to do with the actor Humphrey Bogart.  It is common that the first word in Ashley product reference labels are city names, and "Bogart" in this product was named after the city of Bogart, Georgia.  This was not uncommon since, at the time that the "Bogart Ocean" product was introduced into the market, approximately one-third of the product reference labels for Ashley products used the

and this Court grants such motion, Defendants will then file these exhibits in accordance with this Court's order.

name of a city.  Also, there were several other furniture collections introduced at the same time as "Bogart Ocean."  All of these were named after cities, and one was ever named after another city in Georgia (Dalton, GA).  Ex. B, ¶ 4.  The word "Ocean" was chosen because "Ocean" is a creative way to refer to the color blue.  "Bogart Ocean" was blue colored upholstery.  Id.

Ashley never intended for "Bogart Ocean" furniture to reference or be associated with the actor Humphrey Bogart, and Ashley never took any action to in any way trade upon Humphrey Bogart's popularity in selling this product.  For example, Ashley never referenced the name "Humphrey" in selling this product.  Also, Ashley never used a picture or any type of likeness or image of Humphrey Bogart.  Ashley also never referenced any voice, signature or character of Humphrey Bogart, or any of the details of the life or movies of Humphrey Bogart.  Ex. A, ¶ 13; Ex. B, ¶ 5.

### E.   "BOGART OCEAN" WAS NEVER SEEN BY MOST CUSTOMERS, AND WAS NEVER USED AS A BRAND NAME

In the substantial majority of instances in which the "Bogart Ocean" product was sold in stores, it is likely that Ashley customers were never aware of the product identifier "Bogart Ocean."  In other words, most consumers who saw and purchased the product would have been unaware that it was referred to by Ashley as "Bogart Ocean."  This is true because "Bogart Ocean" was only used on a very few documents that customers might see, and even these documents were only used by a few stores.  Otherwise, "Bogart Ocean" was simply an internal reference used by Ashley employees that was not seen by or used with customers.  Ex. A, ¶¶ 7-11.

The few instances where store customers might have seen the words "Bogart Ocean" were limited to a very small number of Ashley Furniture HomeStores that used "Bogart Ocean" on price signs, and store circulars distributed to a limited degree in some markets.  Ex. A, ¶¶ 8-

6

11.  However, even in these circumstances, "Bogart Ocean" was only used as a product identifier label to reference this product.  "Bogart Ocean" was never used as any type of a brand name to identify the source of the products sold.  To the contrary, in every circumstance, the brand name under which "Bogart Ocean" was sold was the Ashley Furniture brand name, and the Ashley Furniture HomeStores brand name.  Id., ¶¶ 8-10.  The product identifier "Bogart Ocean," in the few instances it might have been displayed to customers, was always presented in a subordinate fashion, and in a small font.  Id.

###### F.    THERE IS NO EVIDENCE OF ANY LIKELIHOOD OF CONFUSION

Neither Plaintiff nor Defendants have uncovered any evidence that any person was ever confused by "Bogart Ocean" and thought that this Ashley product was in any way associated with Plaintiff or Humphrey Bogart.  Ex. A, ¶ 18; Ex. B, ¶ 6;  Ex. E at 69:25-70:21; Ex. F at 75:20-77:6.  Moreover, Plaintiff has not conducted a consumer survey in this case, so Plaintiff has no evidence of any likelihood of confusion between "Bogart Ocean" and its claimed intellectual property rights.  The lack of any evidence of confusion is not surprising because Ashley did not ever use the name, image, likeness, or persona of Humphrey Bogart to sell "Bogart Ocean" furniture.  Moreover, Ashley never used the words "endorsed", "sponsored", "supported", "authorized" or "approved" in conjunction with its "Bogart Ocean" furniture, nor any other words that would in any way give the impression the furniture was in some way affiliated or associated with any person or company other than Ashley.  Ex. A, ¶ 12.

### III.    ARGUMENT AND AUTHORITY

Plaintiff cannot establish any evidence to link Ashley's "Bogart Ocean" furniture to the actor Humphrey Bogart, and Plaintiff cannot establish any evidence of a likelihood of confusion between "Bogart Ocean" and any trademark or publicity right owned by Plaintiff.  Thus, Ashley is entitled to summary judgment on all claims.

## A.   PLAINTIFF CANNOT PREVAIL ON LANHAM ACT CLAIMS BECAUSE THERE IS NO LIKELIHOOD OF CONFUSION AS A MATTER OF LAW

Plaintiff has alleged claims for trademark infringement under 15 U.S.C. § 1114, based on the registered mark HUMPHREY BOGART, and false designation of origin under 15 U.S.C. § 1125(a), based on the alleged common-law trademark BOGART (collectively, the "Bogart Marks").  Complaint, ¶¶ 62-72.  In order to prevail, Plaintiff "must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007).[4]  The exact same factors used in determining likelihood of confusion for false designation of origin claims asserted under § 1125(a) are also used in evaluating infringement claims arising under § 1114.  Tana v. Dantanna's, 611 F.3d 767, 773 n.5 (11th Cir. 2010).

"The touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."  Custom Mfg., 508 F.3d at 647.  "Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion."  Importers Service Corp. v. GP Chemicals Equity, LLC, 652 F. Supp. 2d 1292, 1307 (N.D. Ga. 2009).  A plaintiff must prove that confusion is "'likely', not merely 'possible.'"  Custom Mfg., 508 F.3d at 651; cf. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 841 n.19 (11th Cir. 1983) (noting that "the true legal standard is not

---

[4] A registered mark carries a presumption of validity, satisfying the first element of a Lanham act claim. However, no such presumption exists for the claimed common-law mark BOGART, and Plaintiff has "the burden of sustaining a high degree of proof in establishing a secondary meaning" in order to proceed with a claim under § 1125(a).  Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC, 685 F. Supp. 2d 1360, 1368 (N.D. Ga. 2010).  As analyzed infra at III.A.2., it is highly doubtful whether Plaintiff could ever present the type of evidence necessary to satisfy this burden.

simply the 'likelihood of confusion' but rather the 'likelihood of *unreasonable* confusion'") (emphasis added).

A fatal weakness in Plaintiff's case here is that there is no evidence supporting a likelihood of confusion, "which is an essential element" of Plaintiff's trademark claims. Custom Mfg., 508 F.3d at 648.  Courts in the Eleventh Circuit apply a seven-factor balancing test to determine likelihood of confusion:

> (1) the strength of the mark alleged to have been infringed;
> (2) the similarity of the infringed and infringing marks;
> (3) the similarity between the goods and services offered under the two marks;
> (4) the similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base;
> (5) the similarity of advertising methods;
> (6) the intent of the alleged infringer to misappropriate the mark holder's good will; and
> (7) the existence and extent of actual confusion in the consuming public.

Tana, 611 F.3d at 774-75.  While likelihood of confusion is a question of fact, it is properly decided as a matter of law when there is no evidence upon which a jury could reasonably find a likelihood of confusion.  Tana, 611 F.3d at 775 n.7.

### 1.    Plaintiff Has No Evidence of Actual Confusion

The absence of actual confusion, considered with all the other factors, is fatal to Plaintiff's claims.  Evidence of actual confusion in the consuming public is overwhelmingly "the best evidence of likelihood of confusion." Corrpro Companies, Inc. v. Meier, 2007 U.S. Dist. LEXIS 58533, *12 (M.D. Ga. 2007); Alliance Metals, Inc. v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000) ("The most persuasive evidence . . . is proof of actual confusion.").  Thus, in the seven-factor balancing test, "the type of the mark and evidence of actual confusion are the most weighty of considerations," and so these are issues typically addressed first.  Custom Mfg., 508 F.3d at 650 (quoting Hi-Tech Pharms., Inc. v. c., 650 Fed. Appx. 348, 350 (11th Cir. 2005)).

Without evidence of actual confusion, a plaintiff is often unable to overcome a motion for summary judgment and prove trademark infringement.  For example, <u>Trilink Saw Chain, LLC, v. Blount, Inc.</u>, 583 F. Supp. 2d 1293 (N.D. Ga. 2008),  the court granted summary judgment for the defendant even though the plaintiff possessed a strong mark, and even though the parties had highly similar products that were marketed and sold to similar customers. <u>Id.</u> The <u>Trilink</u> court "[could] not conclude, without evidence of actual confusion, that [the defendant's use is] likely to lead to consumer confusion." <u>Trilink</u>, 583 F. Supp. 2d at 1318-19. The court further noted that while the marks were similar in the abstract, they were "strikingly dissimilar" as applied. Thus, where there was no evidence of actual confusion or bad faith, summary judgment in favor of the defendant was appropriate.  <u>Id.</u>

Here, the record is similarly bereft of any evidence of actual confusion. Neither Ashley nor Plaintiff is aware of any instances where a customer confused Ashley-branded products with anything associated with Plaintiff, including Thomasville Furniture's Humphrey Bogart Collection.  Ex. A, ¶ 18; Ex. B ¶ 6.  Plaintiff's representatives also acknowledged in their depositions that there have been no instances of consumer confusion.  Ex. E at 69:25-70:21; Ex. F at 75:20-77:6.  There have been no incidents of initial interest confusion among consumers, no evidence of post-sale confusion, or even any evidence that non-customers or potential customers attempted to clarify the origin or association of Ashley's goods.  There is not one shred of evidence in this case of any type of actual confusion.

Where direct evidence of actual confusion is lacking, a plaintiff may nevertheless produce circumstantial evidence of likelihood of confusion by properly conducting a scientific consumer survey.  <u>Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC</u>, 2009 U.S. Dist. LEXIS 129789 (S.D. Fla. 2009) (noting in Lanham Act case for trademark infringement,

the best circumstantial evidence of actual confusion is a consumer survey); AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1544 n.68 (11th Cir. 1986) (survey evidence is probative on the issue of actual confusion).  However, despite the value that courts place on a consumer survey, none has been conducted by Plaintiff in this case.  Thus, Plaintiff here has no evidence of a likelihood of confusion, neither direct nor circumstantial.

While specific instances of actual confusion may sometimes be hard to identify, a consumer survey is easily obtained, and Plaintiff's failure to offer any survey evidence supports a presumption against actual confusion.  See Frehling Enters. Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999).  Moreover, if a plaintiff does not have a consumer survey, confusion can only be proven if there is direct evidence of actual confusion in the market, something that is completely missing in this case.  See Natural Organics, Inc. v. Nutraceutical Corp., 271 Fed. Appx. 89 (2nd Cir. 2008) ("A trier of fact may still conclude that actual confusion exists in the absence of survey evidence, *so long as there is other evidence of actual confusion*. . ..") (emphasis added).

Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815 (Fed. Cir. 1992) highlights the crucial importance of survey evidence in proving likelihood of confusion.  In Braun, the plaintiff failed to produce any survey evidence, empirical studies, or disinterested testimony that was relevant to the likelihood of confusion inquiry.  The court noted that consumer behavior in the marketplace is a "highly relevant factor" in determining trademark infringement, and that surveys are extremely probative evidence of such behavior.  Id. at 828 ("empirical evidence regarding likelihood of confusion is of considerable significance"). Following a jury verdict finding infringement, the trial court in Braun denied the defendant's motion for JNOV. In reversing the lower court, the Court of Appeals determined that the plaintiff's failure to provide

survey evidence justified the inference that there was no likelihood of confusion, and thus JNOV in favor of defendant was proper.  Id. at 828.

Survey evidence is similarly critical in assessing likelihood of confusion for marks with overlapping words.  In Essence Communications, Inc. v. Singh Industries, Inc., 703 F. Supp. 261 (S.D.N.Y. 1988), the court considered whether the competing designations ESSENCE and DIAMOND ESSENCE were confusingly similar.  The court denied a motion for preliminary injunction because "the absence of [actual confusion] is a strong indicator that the likelihood of confusion is minimal," and the plaintiff's "failure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion cannot be shown."  Essence Communications, 703 F. Supp. at 269.

Much like the plaintiffs in Braun and Essence Communications, Plaintiff in this case has produced no evidence from which the court could infer even a scintilla of actual confusion. The absence of both survey evidence and direct evidence of actual confusion strongly supports a presumption against consumer confusion in this case.  See Frehling Enters., 192 F.3d at 1341 n.5.

## 2.   The Bogart Marks Are Weak And Entitled To Limited Protection at Best

It is clear from the record that the registered trademark "Humphrey Bogart" is not a particularly strong trademark, and  the unregistered word "Bogart" standing alone is so weak that it is likely not entitled to any trademark protection at all.  "The strength of a trademark is essentially a consideration of distinctiveness."  Trilink, 583 F. Supp. 2d at 1311.  The less distinctive a mark, the weaker it is and the less protection the mark is accorded.  A mark that is merely descriptive is protected only if it attains secondary meaning.  Investacorp, Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1522 (11th Cir. 1991) (affirming summary judgment

on a descriptive mark's lack of distinctiveness), <u>cert. denied</u> 502 U.S. 1005 (1991).[5]  The names

of historical figures used in connection with a product are often found to be merely descriptive

and not entitled to trademark protection.   <u>In re Carlson Dolls Co.</u>, 31 U.S.P.Q.2d 1319, 1320

(T.T.A.B. 1994) (denying registration of mark "MARTHA WASHINGTON" for a doll

portraying the same well-known historical figure).

Particularly relevant to the instant case, a name like "Bogart" or even "Humphrey

Bogart" is deemed to be merely descriptive unless secondary meaning has enabled the

consuming public to identify the marks with only one particular "proprietor's product or

service." <u>Welding Servs. v. Forman</u>, 509 F.3d 1351, 1358 (11th Cir. 2008); <u>Conagra, Inc. v.</u>

<u>Singleton</u>, 743 F.2d 1508, 1513 (11th Cir. 1984) ("trademark laws protect [a name] only to the

extent that the name has acquired 'secondary meaning'").  For the alleged "Bogart" common law

trademark, Plaintiff has "the burden of sustaining a high degree of proof in establishing a

secondary meaning." <u>Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta,</u>

<u>LLC</u>, 685 F. Supp. 2d 1360, 1368 (N.D. Ga. 2010).  Without secondary meaning to associate a

merely descriptive mark with the source of the goods, the purchaser "will not be misled by an

identical or similar mark." <u>Atlanta Allergy & Asthma</u>, 685 F. Supp. 2d at 1368.

---

[5] Registered trademarks are subject to the same standard of distinctiveness. 15 U.S.C. § 1052(e)(4).
Although Plaintiff's federal registration of HUMPHREY BOGART creates a presumption of
distinctiveness, <u>Scientific Applications, Inc. v. Energy Conservation Corp.</u>, 436 F. Supp. 354, 357 (N.D.
Ga. 1977), that presumption "is easily rebuttable, since it merely shifts the burden of production to the
alleged infringer." <u>Custom Vehicles, Inc. v. Forest River, Inc.</u> 476 F.3d 481, 486 (7th Cir. 2007); <u>see also</u>
<u>Persha v. Armour & Co.</u>, 239 F.2d 628, 630 (5th Cir. 1957).  Ultimately, the "policy reasons for requiring
secondary meaning…extend equally to the use of full names." <u>Tana</u>, 611 F.3d at 776. The intrinsic
weakness of a registered mark must still be considered in assessing the breadth of protection afforded
under the <u>likelihood of confusion</u> analysis.  <u>See</u>, <u>e.g.</u>, <u>Therma-scan, Inc. v. Thermoscan, Inc.</u>, 295 F.3d
623 (6th Cir. 2002); <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135 (9th Cir. 2002) ("Even where a
trademark is incontestable and 'worthy of full protection', the significance of its presumed strength will
depend on its recognition among members of the public").

Plaintiff can prove secondary meaning only if it can prove that the public identifies its alleged trademarks with plaintiff's business. Welding Servs., 509 F.3d at 1358 (secondary meaning exists "when the primary significance of the term in the minds of the consuming public is not the product but the producer."). "Actual identification is best proved by surveys or other quantifiable proof, and, absent such data, it is very difficult to prove" secondary meaning. Atlanta Allergy & Asthma, 685 F. Supp. 2d at 1368.  See, e.g., Investacorp, Inc., 931 F.2d at 1522 (plaintiff's failure to provide survey evidence is compelling evidence of no secondary meaning); American Television and Communications Corp. v. American Communications and Television, Inc., 810 F.2d 1546, 1549 (11th Cir. 1987) (plaintiff's failure to submit survey evidence of secondary meaning supported a finding that none existed).  Plaintiff in this case has not produced any survey or similarly objective evidence of any secondary meaning in its claimed trademarks.  In particular, there is no evidence that consumers necessarily associate the word "Bogart" standing alone with Plaintiff.

In determining the strength of a claimed trademark, the Court should consider not only its distinctiveness but also how it is used throughout the entire market.  Trilink, 583 F. Supp 2d at 1311.  In the market, "Bogart" is a common term used in wide variety of settings completely unrelated to Plaintiff.  For example, "Bogart" is widely used in the names of public venues like parks, streets, towns, libraries, and neighborhoods.  Private businesses also use "Bogart" in their name, such as a furniture store, school supply store, car racing company, plumbing company, and computer business.  Ex. E (87:17 - 115:22).  This widespread and common usage of "Bogart" severely weakens any claimed trademark rights in the name.  See Cairns v. Franklin Mint Co., 292 F.3d 1139 (9th Cir. 2002) (extensive and unrelated third-party use of celebrity's name, image and likeness weakened trademark-like rights in the name such that "[the celebrity's]

image has truly lost any significance as a mark identifying the source of a product").  Where a mark like "Bogart" has a weak and indirect relationship across a myriad of products and services, and it is used by multiple third-parties, the mark cannot be very distinctive.  <u>See</u> J. T. MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:85 (4th ed. 2010). "Bogart" is also the surname of several famous people in addition to Humphrey Bogart.[6] Moreover, the U.S. Census conducted in 2000 included over 6300 individuals with the surname "Bogart" in the United States alone.[7]  Given all of these many and varied uses of "Bogart," it is highly unlikely that the consuming public would understand the word "Bogart" combined with the word "Ocean" to clearly or necessarily reference either Plaintiff or deceased actor Humphrey Bogart.

### 3.   Ashley's Usage Is Not Confusingly Similar To The Bogart Marks

Although Plaintiff claims a common-law trademark in the word BOGART standing alone, the reality is that Plaintiff most often licenses other indicia of identity (like a picture or the first name "Humphrey') to go along with "Bogart."  This is particularly true with respect to furniture. ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  "In considering the similarities and differences between marks, the marks in their entireties must be compared in light of what occurs in the marketplace, not the courtroom."  <u>Trilink</u>, 583 F. Supp. 2d at 1315

---

[6] "Bogart" is the surname of Grammy-winning music executive Eric Bogart and his father Nick, Cannes Film Festival awardee and well-regarded director Paul Bogart, and famed French perfumier Jacques Bogart.  <u>See</u> Ex. G.
[7] D. Word, C. Coleman, R. Nunziata & R. Kominski, "Demographic Aspects of Surnames from Census 2000," U.S. Census Bureau (2008).  Ex. H. (of the 6 million surnames present in Census 2000, "Bogart" was the 5103rd most popular).

(internal quotation and citation omitted); accord Corbitt Mfg. Co. v. GSO America, Inc., 197 F. Supp. 2d 1368, 1377 (S.D. Ga. 2002).  Thus, any trademark that Plaintiff claims in "Bogart" should be considered in conjunction with the full name, likeness, image and reputation of actor Humphrey Bogart, because that is how it is most often used and understood in the market.  See Trilink, 583 F. Supp. 2d at 1315; see also Corrpro Companies, Inc. v. Meier, 2007 U.S. Dist. LEXIS 58533, *12 (M.D. Ga. 2007) (actual use in the marketplace minimized any similarity between two designations).

Ashley's use of the "Bogart Ocean" designation is not similar to the way Plaintiff licenses its alleged intellectual property.  First, Ashley's use of "Bogart Ocean" was never accompanied by explicit or implicit referral to the persona, likeness, name or reputation of Humphrey Bogart, which is the integral component of Plaintiff's marks.  Ex. A, ¶ 13; Ex. B, ¶ 5. Ashley's usage never made any reference to Humphrey Bogart or Bogart, LLC as the originator or endorser of Ashley's furniture.  Ex. A, ¶¶ 3, 12.  In fact, all of Ashley's usage of "Bogart Ocean" was always accompanied by clear branding showing Ashley Furniture as the source of the goods, and such marketing does not create the impression of endorsement by or affiliation or association with either Plaintiff or Thomasville Furniture.  Id.  These facts further diminish any possibility of confusion.  Corrpro Companies, 2007 U.S. Dist. LEXIS 58533 at *12 (where the company name was written out beside the mark in question, this "substantially reduces the likelihood of confusion.").

Second, in addition to being accompanied by the name, logo and trademarks of Ashley, "Bogart Ocean" always contains the modifying word "Ocean."  Ex. A, ¶ 5.  This consistent use of an unrelated word further distances the Ashley usage from the Bogart Marks.  Essence Communications, 703 F. Supp. at 269 (no likelihood of confusion between ESSENCE and

DIAMOND ESSENCE based in part upon the addition of the word DIAMOND).   "Bogart Ocean" is also visually and phonetically dissimilar from the Bogart Marks.

Trilink Saw Chain, LLC, v. Blount, Inc., 583 F. Supp. 2d 1293 is on point regarding the issue of similarity in this case. There, the court compared the mark PROLINE with the mark PRO-LITE, both used by producers of chainsaw parts.  Id. at 1311. Although noting that the marks were patently similar in the abstract, the court determined that their usage in the market place was dissimilar enough to dispel any likelihood of confusion.  Trilink, 583 F. Supp. 2d at 1314-15. Specifically, the consistent usage of the marks alongside other words and images created marked differences when viewed in the marketplace. This established sufficient dissimilarity to undermine the plaintiff's claims and justify dismissal at summary judgment. Trilink, 583 F. Supp. 2d at 1315.  Likewise, Plaintiff's use of "Bogart" with furniture is always accompanied by additional references to the identity of Humphrey Bogart.  On the other hand, Ashley's incorporation of "Bogart" into the product identifier "Bogart Ocean" never makes such a connection, it always includes the word "Ocean," and it always appears with a prominently situated Ashley logo or trademark.

### 4.    There Is No Similarity of Products, Sales, or Advertising

As to the third, fourth and fifth factors of the likelihood of confusion test, there is no meaningful similarity between the parties' products, sales methods, and advertising in this case. In considering these factors, courts compare the parties' products and customers, paying particular attention to whether the price, quality of goods and potential customers result in direct competition.  However, these three factors rarely play a pivotal role in determining likelihood of confusion, particularly where, as here, intent and actual confusion are missing.[8]  Notwithstanding

---

[8]  Absent actual confusion or wrongful intent, these factors are rarely dispositive.  See, e.g., Atlantic National Bank v. Atlantic Southern Bank, 2010 U.S. Dist. LEXIS 133665 (S.D. Ga. 2010) (granting

their lack of any particular significance in this case, each of these factors also support summary judgment for Ashley.

Bogart's business is predicated on licensing the name, image, likeness and reputation of actor Humphrey Bogart for use across the entertainment industry.   Complaint, ¶ 63. 

On the other hand, Ashley operates an established and reputable furniture sales business focused on delivering Ashley-branded products.  Ashley operates showrooms, catalog sales and online websites to provide Ashley-brand furnishings across the United States, and through quality of craftsmanship and service has obtained high levels of brand recognition for decades. Ashley advertises its various styles and collections of Ashley-branded furniture through industry publications, print and television media, and by way of the internet.  In every case, the name, logo and trademarks of Ashley Furniture display prominently to identify the origin and reputation of the goods.  Ex. A, ¶¶ 2-3.  Ashley does not use celebrity names, endorsements, or sponsorships to sell its products.  Id., ¶ 3.

---

summary judgment in favor of defendant despite identical goods, services, retail outlets, customers and advertising methods, noting that these factors are not dispositive); Alaven Consumer Healthcare v. DrFloras, LLC, 2010 U.S. Dist. LEXIS 9366 (N.D. Ga. 2010) (obvious similarities of products, retail outlets and advertising methods, even with a strong mark, were insufficient to overcome grant of summary judgment for defendant on issue of likelihood of confusion where there was no proof of actual confusion).

████████████████████████████████████████

████████████████   Thomasville's Humphrey Bogart Collection consists of high-end, custom-designed suites of expensive wood furniture.  Ex. A, ¶¶ 15-16.  The marketing and launch of the Thomasville collection involved direct and intentional reference to Humphrey Bogart's name, image, likeness and entertainment reputation, included his immediate family members, and created a direct association between the furniture and his persona.  Id., ¶ 15. Thomasville's collection was composed of expensive furniture reminiscent of the 1940s and 1950s, whereas "Bogart Ocean" was very inexpensive, blue, overstuffed upholstery in a contemporary design.  Id., ¶¶ 15-16.  The price, design and style of these two products, and the way they were marked, could not have been more different.

The character of Ashley's use is also dissimilar, because Ashley never used the "Bogart Ocean" designation as a trademark.  Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1216 (11th Cir. 2000) ("Trademarks . . . answer the question 'Who made it?' rather than 'What is it?'").  Ashley's sole use of "Bogart Ocean" was as a product identifier used to internally differentiate between similar looking pieces of upholstered furniture.  Ex. B,  ¶¶ 5-6; Ex B, ¶ 2.  The "Bogart Ocean" designation was never "used to signify origin to customers and competitors," and thus does not constitute use as a trademark.  Thoroughbred Legends, LLC v. Walt Disney Co., 2008 U.S. Dist. LEXIS 19960, *14 (N.D. Ga. 2008) (emphasis in original).  Additionally, the vast majority of Ashley's use was not directed at consumers, but was used in material distributed to internal sales staff and third-party retailers.  Ex. A, ¶¶ 7-11.  "Bogart Ocean" was predominately an internal label for Ashley's inventory management system, utilized much like a SKU or PLU.[9] Id.  Because it was not directed at consumers, Ashley's use of "Bogart Ocean" could not have

---

[9] Stock-keeping Unit (SKU) or Product Look-up (PLU) codes are commonly used across a variety of industries to help retailers keep track of multiple designs, lines, and colors of a particular type of product.

caused any appreciable confusion as to the origin or association of the goods. 15 U.S.C.
§ 1125(a)(1); <u>Custom Mfg.</u>, 508 F.3d at 647.  These undisputed facts further diminish any
possibility of confusion.

### 5.  There Is No Evidence of Wrongful Intent

"[W]here a story of the creation of a mark is undisputed and shows an innocent origin . . .
there is no intent of misappropriation contributing to a likelihood of confusion." <u>Tana</u>, 611 F.3d
at 779. In this case, on the element of intent, the record weighs heavily in favor of Ashley.  In
fact, the undisputed evidence shows Ashley's specific intent NOT to use the full name, image,
likeness and persona of Humphrey Bogart.  Ashley never once referenced the full name of
Humphrey Bogart, and never utilized his picture or referenced his persona in any way shape or
form.  Ex. A, ¶ 13; Ex. B, ¶ 5.  Moreover, the evidence is undisputed that Ashley came up with
the word "Bogart" in "Bogart Ocean" as a reference to the city of Bogart, GA.  Ashley has
submitted a sworn statement to this effect from the employee who developed the name.  Ex. B,
¶ 4.  Moreover, there is substantial circumstantial evidence to prove that this product identifier
originated with the town of Bogart, Georgia.  It is common for Ashley to use city names in the
names of its products, and many products introduced at the same furniture market as "Bogart
Ocean" also had the name of a city as the first word of the name.  For example, one of these
product names included the word Dalton, named after the city of Dalton, Georgia.  <u>Id.</u>  Plaintiff's
corporate representative admitted in his deposition that Plaintiff cannot dispute the fact that
"Bogart" in "Bogart Ocean" was derived from the city of Bogart, Georgia.  Ex. E (87:17-20).

Moreover, Ashley did not ever use "Bogart Ocean" as any sort of a brand name to
identify a source of its product, but instead only used "Bogart Ocean" as a product identifier to
permit the company's employees to easily differentiate between very similar looking upholstery
items.  Ex. A,  ¶¶ 3-6.  The brand names used to identify the source of "Bogart Ocean" furniture

were all trademarks owned by Ashley that use the word "Ashley" and have nothing whatsoever to do with Humphrey Bogart. Id., ¶ 3. There is absolutely no evidence of any effort to try and capitalize on anything having to do with Humphrey Bogart.

This case is indistinguishable from Tana v. Dantanna's, 611 F.3d 767 (11th Cir. 2010) in which famed Hollywood restaurateur Dan Tana sued the owners of Atlanta sports bar *Dantanna's* for common-law trademark infringement and misappropriation of likeness related to Tana's eponymous restaurant "Dan Tana's." The court found that summary judgment for defendant was proper where the plaintiff did not dispute the defendant's evidence of the mark's non-infringing origin. Given that the plaintiff offered no countervailing evidence of how the restaurant's name originated, the court was bound to accept the defendant's story as true. Tana, 611 F.3d at 779. Here, an identical situation exists. Ashley's non-infringing explanation that the town of Bogart, Georgia inspired its use of the term "Bogart" in "Bogart Ocean" is supported by substantial circumstantial evidence which Plaintiff cannot contradict.

Similarly, in Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d at 1318, the court determined that evidence of other litigation involving the defendant was irrelevant to show the requisite bad-faith needed for the case at bar, and also concluded that allegations of deficient trademark clearance procedures were insufficient to demonstrate wrongful intent. Instead, the court found that the plaintiff's weak evidence of both intent and actual confusion, along with a low degree of similarity between the marks as used in the market, entitled the defendant to summary judgment. Id. at 1319. Here, Plaintiff has not even accused Ashley of the weak level of "willful blindness" that was alleged and refuted in Trilink. Thus, for the purposes of analyzing the likelihood of confusion, the issue of intent also weighs conclusively in favor of Ashley.

**B.**   **PLAINTIFF'S STATE LAW CLAIMS OF UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES FAIL ALONGSIDE THE LANHAM ACT CLAIMS**

Where the court determines that there is no likelihood of confusion as a matter of law, it is also proper to dismiss state law claims for unfair competition, unfair and deceptive trade practices, and false designation. Jellibeans, 716 F.2d at 839; Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258 (5th Cir. 1980), cert. denied 449 U.S. 899 (1980)).   In Tana v. Dantanna's, the plaintiff asserted Georgia state law claims of fraud and deceptive trade practices alongside the Lanham Act claims. The court determined that where the plaintiff could not sustain claims under the Lanham Act based on the likelihood of confusion analysis, dismissal of the state law claims was also justified. Tana, 611 F.3d at 782; accord Welding Svcs., 509 F.3d at 1355-56 (dismissing Lanham Act claims alongside unfair competition and deceptive trade practices claims brought under Georgia law).

**C.**   **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S  RIGHT OF PUBLICITY CLAIMS**

**1.**   **Plaintiff's Right of Publicity Claims Are Duplicative Of The False Endorsement Claims Under The Lanham Act**

The assertion underlying all of Plaintiff's claims, both for trademark infringement and misappropriation of publicity, is essentially the same theory of false endorsement.[10] Such a claim is based on the unauthorized use of a celebrity's identity, and falls under 15 U.S.C. § 1125(a) in that it alleges the misuse of a trademark such as the identity, image, name, visual likeness, vocal imitation, or other uniquely distinguishing characteristic of an individual.   Waits v. Frito-Lay, 978 F.2d 1093, 1110 (9th Cir. 1992).   Thus, where a celebrity plaintiff asserts a false endorsement claim, the "mark" at issue is essentially "the celebrity's persona," which is the same

---

[10] A false endorsement claim is available where defendant's conduct has allegedly created "a likelihood of confusion as to whether plaintiffs were endorsing [defendant's] product."  Wendt v. Host Int'l, Inc., 125 F.3d 806, 812 n. 1 (9th Cir. 1997); see also Martindale-Hubbell v. Dunhill, 1993 U.S. Dist. LEXIS 21485, *28 (S.D. Fla. 1993).

interest protected by right of publicity statues.  See  Wendt v. Host Int'l, Inc., 125 F.3d 806, 812 n. 1 (9th Cir. 1997).  The public policy behind a right of publicity statute is no different than the trademark protections afforded by the Lanham Act – both seek to protect the economic interests of a celebrity's right to endorse or associate with certain products or ventures.

If a plaintiff is unable to recover for trademark infringement under a theory of false endorsement due to the absence of any likelihood of confusion, then the same plaintiff would be unable to recover under a right of publicity theory of wrongful sponsorship or endorsement because the claims are duplicative.  See Waits, 978 F.2d at 1113 (holding that damages claimed pursuant to a false endorsement claim under § 1125(a) are duplicative of any award for misappropriation of right of publicity under Cal Code § 3344).  Indeed, the right of publicity statutes asserted by Plaintiff seek to protect the persona (name, image, likeness, etc) of public individuals from unauthorized use. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1004 (9th Cir. 2001) (quoting MCCARTHY, RIGHTS OF PUBLICITY AND PRIVACY § 11.13[C] at 11-72-73 (1997) ("... what is protected by the Right of Publicity is the very identity or persona of the plaintiff as a human being.").  However, as is established conclusively above, Ashley has not in any way utilized, or created any association with, the persona of Humphrey Bogart.  Ashley never even referenced Humphrey Bogart's full name, image, likeness, movies, or any aspect of his persona.  Ex. A, ¶ 13; Ex. B, ¶ 5.  Moreover, Ashley never even used the word "Bogart" standing alone, but instead always used "Ocean" after "Bogart."  Ex. A, ¶ 5.  "Bogart Ocean" was used only as a product identifier, never to indicate source of goods, and the word "Bogart" was derived from the city Bogart, Georgia, having nothing to do with Humphrey Bogart.  Ex. A, ¶¶ 4-6; Ex. B, ¶ 4.  Under such circumstances, Ashley has done absolutely nothing that would

23

constitute an unauthorized use of Humphrey Bogart's persona and could not have violated any state law publicity protection.[11]

**2.    The Claims Asserted Under Washington And Georgia Law Are Inapplicable In This Case**

Plaintiff has asserted right of publicity claims under the laws of Washington, Georgia, and California.  As set forth above, Plaintiff cannot prevail under any of those statutes because Ashley did not in any way use the persona of Humphrey Bogart.  Moreover, as a matter of law, no claim can be pursued under either the Washington statute or Georgia common law.

In determining whether a decedent's estate is entitled to a survivorship right of publicity, the court must look to the law of the decedent's domicile at the time of death. MCCARTHY, RIGHTS OF PRIVACY & PUBLICITY, § 6.5[A][A] n.2 (hereinafter PUBLICITY & PRIVACY) (stating general rule of conflicts is to apply law of state of domicile of decedent to determine whether there is post-mortem right of publicity); Acme Circus Operating Co., Inc. v. Kuperstock, 711 F.2d 1538, 1541 (11th Cir. 1983) (under California law, the Eleventh Circuit applied the law of the decedent's domicile to determine whether a right of publicity exists).  Since Humphrey Bogart died a resident and domiciliary of California in 1957, neither Georgia nor Washington law are relevant to this case.

Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd., 766 F. Supp. 2d 1122 (W.D. Wash. 2011) is a case directly on point.  There, the U.S. District Court considered right of publicity claims asserted under R.C.W. § 63.60.010 by the successor-in-interest of musician Jimi

---

[11] In addition to the foregoing, this Circuit has held that a state law claim for misappropriation of likeness will not be sustained absent a showing of intent.  Under Georgia law, "[a]n appropriation of likeness claim without an intent to use the likeness for one's benefit fails to meet the very definition of the tort itself," and thus summary judgment is proper.  Tana, 611 F.3d at 783; see also Blakey v. Victory Equip. Sales, Inc., 576 S.E.2d 288, 292 (Ga. Ct. App. 2002) (upholding summary judgment awarded to defendant on appropriation-of-likeness claim for the sole reason that there was "no evidence . . . that defendants ever knowingly took Blakely's identity for their purposes").  As shown *supra* at III.A.5, Plaintiff can not prevail on the issue of intent.

Hendrix.  The court held that the attempted retroactive long-arm effect of R.C.W. § 63.60.010 was unconstitutional. In attempting to convey jurisdiction over rights of publicity of non-resident celebrity decedents, R.C.W. § 63.60.010 was deemed violative of the Due Process clause and the Full Faith and Credit clause of the U.S. Constitution, and was thereby unenforceable.  Id. at 1141.

A similar result is apparent for claims asserted under Georgia law. Although Georgia common law does recognize a post-mortem right of publicity, it has only done so for residents of Georgia domiciled within the state at the time of death.  Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc., 250 Ga. 135 (1982); Toffoloni v. LFP Publishing Group, LLC, 572 F.3d 1201 (11th Cir. 2009). No authority exists to extend the Georgia right of publicity to non-resident decedents for whom another set of laws may already apply, and to make such an extension here would be inapposite. PUBLICITY & PRIVACY § 11.3[D][3][c] ("It makes sense to apply the law of decedent's domicile to such an issue in order to avoid having the post mortem Right of Publicity viewed as 'property' in the courts of one state and not in another as to the estate of the same deceased person.").

### 3.     Plaintiff Fails To State A Claim Under CALIFORNIA CIVIL CODE § 3344.1

California's right of publicity statute is the only one available to Plaintiff, but no claim is stated under the facts of this case.  In order to sustain a cause of action for right of publicity under CAL. CIV. CODE § 3344.1, Plaintiff must prove (1) Ashley's use of the Humphrey Bogart's identity, (2) the appropriation of the Humphrey Bogart's name or likeness to Ashley's commercial advantage, (3) a direct connection between the alleged use and the commercial purpose, (4) lack of consent, and (5) resulting injury. CAL. CIV. CODE § 3344(a); Butler v. Target

Corp., 323 F Supp 2d 1052 (C.D. Cal. 2004). [12]   A key fact under this statute is that Ashley never used the full name of Humphrey Bogart. For example, if Ashley's furniture been labeled "Smith-Ocean," actor Will Smith would not have had a cause of action because that indistinct usage, by itself, did not equal the misappropriation of Mr. Smith's right of publicity. None of the cases construing CAL. CIV. CODE § 3344 find that the right of publicity has been violated when only the last name is used, disconnected from any other reference to the celebrity at issue. See, e.g., Downing v. Abercrombie & Fitch, 265 F.3d 994 (name with photographic image); Cairns v. Franklin Mint Co., 120 F. Supp. 2d 880, 883 (C.D. Cal. 2000), aff'd, 292 F.3d 1139 (9th Cir. 2002) (name with likeness); Waits v. Frito-Lay, 978 F.2d 1093 (9th Cir. 1992) (imitation of musician's distinctive voice combined with parody of well-known song); Wendt v. Host Int'l, Inc., 125 F.3d 806 (9th Cir. 1997) (animatronic robotic figure based on actor's likeness).   Here, the record shows that Ashley never used Humphrey Bogart's identity (element 1) or appropriated the name "Humphrey Bogart" or his likeness (element 2). See Solano v. Playgirl, Inc., 292 F.3d 1078, 1088 (9th Cir. 2002).   Ashley is therefore entitled to summary judgment under the California statute because there is no evidence to meet two elements of that statute.

**4.      In Any Event, Damages Under Section 3344.1 Are Limited to California Sales**

Further limiting Plaintiff's claims under CAL. CIV. CODE § 3344.1 are the requirements of subsection (n), which states as follows:

> This section shall apply to the adjudication of liability and the imposition of any damages or other remedies in cases in which the liability, damages, and other remedies arise from <u>acts occurring directly in this state</u>.   For purposes of this section, acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or in advertising or selling, or

---

[12] See Bravado Int'l Group Merch. Servs. v. Cha, 2011 U.S. Dist. LEXIS 20021 (C.D. Cal. 2011).  The two provisions (§ 3344 and § 3344.1) are substantially related such that the liability analysis under both would be the same in this case.

soliciting purchases of, products, merchandise, goods, or services prohibited by this section. (emphasis added).

CAL. CIV. CODE § 3344.1(n). This section of the post-mortem right of publicity statute has the effect of limiting claims under the statute to only those product sales made in California. Cairns v. Franklin Mint Co., 120 F. Supp. 2d 880, 883 ("The only reasonable interpretation of this provision from its plain language is that it applies only to claims that arise out of acts occurring in California."). The provision expressly limits the reach of the statute's coverage, and forecloses the possibility that a party may recover under CAL. CIV. CODE § 3344.1 for sales outside the state of California. Id. In this case, Plaintiff is unlikely to be able to prove any sales of "Bogart Ocean" furniture in California. At the very least, however, if the Court allows the right of publicity claim to proceed despite Plaintiff's lack of proof, the Court should make clear that the right of publicity claim is limited to those sales (if any) that Plaintiff can prove to have taken place in California.

### D. ASHLEY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DAMAGES CLAIMS

For the reasons previously discussed, Plaintiff cannot prevail on its substantive claims and Ashley is entitled to summary judgment on all claims. However, even if this Court were to allow some limited claims to proceed, Ashley is alternatively entitled to summary judgment on Plaintiff's claim to recover monetary damages for the additional reason that Plaintiff has no admissible evidence to support its claim to monetary damages.

Ashley specifically asked Plaintiff to identify and quantify its damages during discovery. Ex. D (Plaintiff's Responses to Defendants' First Set of Interrogatories, Response No. 6). After vaguely describing the categories of damages that *may* be available for its substantive claims, Plaintiff promised to "supplement this response with detailed damages calculations…" Id.

Plaintiff's 30(b)(6) designee, Robert de Klerk, was also asked to quantify Plaintiff's alleged damages.  Ex. E at 222:23–223:21.  de Klerk could not point to any calculation of damages other than the report of Plaintiff retained damages expert, Jon Albert Levy.  With the sole exception of Levy's expert report, Plaintiff has never attempted to identify or quantify its damages, or to provide any support for a claim to recover monetary damages.

As discussed in detail in defendants' accompanying motion and brief seeking exclusion of the report and opinions of Levy, Levy failed to apply any recognized methodology for calculating damages.  Levy has no understanding of legally accepted methodologies for calculating damages, and he expressly rejects all methodologies.  In Levy's opinion, the calculation of damages is an "art" and not a "science," and "there is no formula for it."  Contrary to Levy's opinion, however, there are well recognized and accepted formulas for calculating damages in a case such as this one.  Levy just does not know them or chooses to ignore them.  Levy's resulting opinions are unreliable and inadmissible under the Federal Rules and Supreme Court precedent.  See FED. R. EvID. 702; see, e.g., Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  Since the only quantification and evidence of the monetary damages sought by Plaintiff is Levy's report, and since that report is inadmissible, Ashley is entitled to summary judgment on all claims of monetary damages.

### E.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR PUNITIVE AND EXCEPTIONAL DAMAGES

Even assuming for the sake of argument that the Court finds some claim that survives summary judgment, Plaintiff's claims for exemplary, punitive, and exceptional damages under any cause of action are unfounded and should be dismissed.  As analyzed more extensively supra at III.A.5, all evidence in the record weighs heavily against a finding of wrongful intent or

malice on the part of Ashley. Thus, any claims for exceptional or punitive damages or for an award of attorney's fees should be rejected as without factual support.

Georgia's standard for granting punitive damages is very high.   See SCQuARE International, Ltd. v. BBDO Atlanta, Inc. 455 F.Supp.2d 1347 (N.D. Ga. 2006). Pursuant to Section 51-12-5.1 of the Official Code of Georgia, punitive damages may only be awarded where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b). Plaintiff cannot present any evidence to suggest anything close to such misconduct in this case.

Likewise, Plaintiff has failed to meet the high evidentiary standards for exemplary damages under California law. In order to prevail on a claim for punitive damages in California, there must be clear and convincing evidence that the defendant is guilty of oppression, fraud or malice. CAL. CIV. CODE § 3294;  Campbell v. Cal-Gard Surety Services, Inc. 62 Cal. App. 4th 563 (4th Dist. 1998) (even a finding that a defendant violated the duty of good faith and fair dealing does not support an award of punitive damages). Where a plaintiff fails to provide evidence of fraud, oppression, or malice, a defendant is entitled to summary judgment on the issue of punitive or exemplary damages. Montoya v. Management Training Corp., 2011 US Dist. LEXIS 125520 (E.D. Cal 2011);  accord Escriba v. Foster Poultry Farms, 2011 US Dist. LEXIS 59435 (E.D. Cal 2011) (no direct evidence of fraudulent conduct).  Even where triable issues of fact may preclude summary judgment on the underlying issues of liability, summary judgment on claims for punitive damages is still proper where the plaintiff has separately failed to meet the "clear and convincing" evidentiary standard. Wilson v. 21st Century Ins. Co., 136 Cal. App. 4th 97 (2d Dist. 2006), reh'g denied, 2006 Cal. App. LEXIS 305, aff'd, 42 Cal. 4th 713 (2007).

Under the Lanham Act, "an exceptional case is one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332, 1335 (11th Cir. 2001) (citations and quotation marks omitted); In <u>Welding Svcs.v. Forman</u>, 301 F. Appx. 862, this Circuit considered the issue of excess damages after a prior determination with respect to liability.  There, the Court found that excessive damages were not justified in the absence of any evidence showing bad faith or wrongful intent, and granted summary judgment for the defendant.

Here, there is simply no showing of fraud, malice, or willful intent on the part of Ashley. To the contrary, all evidence shows that Ashley acted innocently and without any intention to trade upon the name, image or likeness of Humphrey Bogart.  All claims for punitive or exceptional damages should therefore be dismissed.

## IV.   <u>CONCLUSION</u>

Based on the foregoing arguments and authorities, Defendants respectfully submit that their motion for summary judgment should be granted on all counts, and this action should be dismissed with prejudice.

This the 1st day of March, 2012.

/s/ Matthew L. Jamison
Charles A. Burke, Esq. (Admitted pro hac vice)
Robert D. Mason, Jr. , Esq. (Admitted pro hac vice)
Matthew L. Jamison, Esq. (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:      (336) 721-3600
Facsimile:      (336) 721-3660
cburke@wcsr.com
rmason@wcsr.com
mjamison@wcsr.com

*Attorneys for Defendants Ashley Furniture
Industries, Inc. (d/b/a Ashley Furniture) and Ashley
Furniture HomeStore*

31

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:10-CV-39 (CDL) |
| ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE, | ) ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law In Support of Defendants' Motion for Summary Judgment* LEVY was electronically filed on this 1st day of March, 2012 with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Additionally, an unredacted version of the foregoing has been served via email upon all attorneys of record, including:

Michael O. Crain
CRAIN LAW GROUP, LLC
297 Prince Avenue
Suite 24
Athens, GA 30601
mocrain@crainlawgroup.com

Cash Vandiver Morris
MAYER & HARPER, LLP
127 Peachtree Street, NE
Suite 1100
Atlanta, GA 30303
cmorris@mayerharper.com

/s/ Matthew L. Jamison
Matthew L. Jamison, Esq. (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:     336-721-3600
E-mail:  mjamison@wcsr.com

32