**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY,

Plaintiff,

v.

ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE,

Defendants.

CASE NO. 3:10-CV-39 (CDL)

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The focus of Ashley's motion for summary judgment is quite simple – there no evidence to support the essential elements of Plaintiff's claims. Plaintiff has not, and cannot, identify any evidence that anyone ever confused or associated Ashley's Bogart Ocean products with the actor Humphrey Bogart, with Thomasville's furniture based on Humphrey Bogart's lifestyle, or with anything else even remotely connected with Humphrey Bogart. Plaintiff also consciously chose not to conduct a consumer survey to try to develop evidence of a likelihood of confusion. Similarly, Plaintiff has produced no evidence that Ashley in any way misappropriated Humphrey Bogart's identity or persona.

Plaintiff improperly seeks to convince the Court that every use of the term "Bogart," with or without other words, constitutes an infringement of Bogart, LLC's rights. This position finds no support in the law, and is disproven by the plethora of third party uses of the term "Bogart" as a brand for goods and services without Bogart, LLC's approval. *See Marriott Corp. v. Ramada, Inc.*, 826 F. Supp. 726, 728, n. 3 (S.D.N.Y. 1993) (noting that J.W. Marriott, Jr. would not have a right of publicity claim based solely on use of surname, "Marriott," because "[t]he use of the surname alone is clearly insufficient to unmistakably identify 'J.W.'."); *see also* **Exhibit I** attached hereto.

Plaintiff also opposes summary judgment by claiming that Ashley's evidence ***might*** be disbelieved and speculating that evidence ***might*** exist precluding summary judgment. To overcome summary judgment, Plaintiff must produce evidence sufficient for a jury to find liability, and Plaintiff has not done so here. Thus, Ashley's motion for summary judgment should be granted.

## I. ARGUMENT

### A. Plaintiff's Speculation And Conjecture Regarding The Persuasiveness of Ashley's Evidence Cannot Defeat Ashley's Motion For Summary Judgment

Plaintiff cannot get its case to a jury merely by "asserting that the jury might . . . disbelieve the defendant . . . ." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). As Ashley has moved for summary judgment on grounds that Plaintiff cannot produce evidence supporting essential elements of all of its claims, Plaintiff must demonstrate a genuine issue of a material fact with ***evidence*** that precludes summary judgment. "Genuine disputes are those in which the ***evidence*** is such that a reasonable jury could return a verdict for [Plaintiff]." *See Ellis v. England*, 423 F.3d 1321, 1325-1236 (11th Cir. 2005) (emphasis added).

"For factual issues to be considered genuine, they must have a real basis in the record." *Id*. at 1326. "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." (*Id*.). A motion for summary judgment may not be defeated by piling inference upon unsupported inference. "[I]nferences based upon speculation are not reasonable." *See Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986); *Local No. 48, United Bhd. v. United Bhd.*, 920 F.2d 1047, 1051 (1st Cir. 1990) ("Rule 56 does not invite a court to enter the realm of conjecture. Evidence that is based on conjecture or . . . supposition is not sufficient to derail the operation of the rule."); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) ("Nor may a party rely on mere speculation and conjecture as to the true nature of the facts to overcome a motion for summary judgment").

**B. Plaintiff's Opposition Misrepresents The Evidence To Overstate Defendant's Alleged Infringement Of Its Claimed Trademark Rights**

Plaintiff's opposition and attached response to the undisputed facts identified by Ashley (Dkt. No. 43, hereinafter the "Opposition") contain numerous conclusory assertions for which Plaintiff provides no citation to actual evidence. For example, Plaintiff asserts that Humphrey Bogart is "relished by consumers nationwide," but Plaintiff fails to cite any evidence to prove such an assertion. (Opposition at 1.) [redacted]

[redacted]

[redacted]

Plaintiff carefully avoids addressing the widespread use of BOGART as a trademark by third parties whose use bears no connection with Humphrey Bogart. For example, Jacques Bogart International, B.V. owns, and has owned since 1987, a federally registered trademark (U.S. Registration No. 1423521) for BOGART, and regularly uses the term BOGART alone on men's colognes.[2] There are also a multitude of other uses of "Bogart" standing alone that have nothing to do with the plaintiff. For example, dozens of people and companies over the years have had federal trademark registrations for combinations of words that contain "Bogart" but have nothing to do with plaintiff.[3] Further, plaintiff cannot dispute the proof in Ashley's motion that "Bogart" is widely used in venues that have no association with Humphrey Bogart. This includes public venues like parks, streets, towns, libraries, and neighborhoods, as well as in businesses such as a furniture store, school supply store, car racing company, plumbing company, and computer business.

Moreover, it should not be forgotten that the only federally registered trademark for the term BOGART alone that plaintiff has ever owned had to be acquired by Plaintiff from a third party office furniture company. (*Id.* at p. 2, fn. 1). Plaintiff voluntarily abandoned the federally registered BOGART trademark during this litigation. (*Id.*). Plaintiff's voluntary abandonment of the only federally registered trademark it has ever had for BOGART underlines a mischaracterization of

---

[redacted] Moreover, the multitude of businesses and other organizations doing business under the name "Bogart" prove definitively that "Bogart" standing alone is not in any way necessarily indicative of Humphrey Bogart.

[2] Jacques Bogart International's registration for BOGART is the oldest federally registered trademark for any mark for or containing "Bogart" active in the United States as it predates plaintiff's registration of the trademark, HUMPHREY BOGART, by over 5 years. *See* **Exhibits J** and **K** hereto.

[3] The trademark registry of the USPTO includes dozens of marks, both current and abandoned, that incorporate or use the word Bogart, most of which have no affiliation with plaintiff. **Exhibit I** is a report from the USPTO registry showing these numerous uses, including bars, restaurants, cigarettes, bicycles, perfume, leather goods, apparel, sunglasses, alcohol, coffee shops, children's toys, and a research hospital, all of which use the word Bogart alone or in combination with other words.

Plaintiff's rights that runs through its opposition brief. Plaintiff asserts that "at all relevant times Plaintiff owned an extremely 'strong federally registered' mark 'Bogart' in the furniture class (020),[4] and had an even stronger common law mark in the same name…" (*See id.*, p. 12). The "extremely strong federally registered" mark to which Plaintiff is referring is the BOGART mark acquired from a third party – the very same mark that Plaintiff abandoned during the pendency of this litigation. The abandonment of this mark belies any claim of strength, as it makes no sense to voluntarily abandon an "extremely strong" trademark registration especially during litigation that involves that very trademark. Moreover, it is equally implausible for an unregistered, common law trademark to be viewed as stronger than a federally registered mark. Federally registered trademarks enjoy a presumption of validity, and the registration serves as evidence of an exclusive right to use the registered mark. *See Nat'l Auto. Club v. Nat'l Auto Club, Inc.*, 365 F. Supp. 879, 882 (S.D.N.Y. 1973) (explaining that "registration of a mark creates a presumption of its validity and is evidence of the exclusive right to its use"). By contrast, common law marks confer no such benefits.

The reality is that Plaintiff currently owns only a single federal trademark registration for HUMPHREY BOGART for use in connection with "clothing; namely, shirts, T-shirts, sweatshirts, hats, coats and pants." (*See* **Exhibit K** attached hereto.) It is undisputed that Ashley never used HUMPHREY BOGART in connection with its accused furniture. Thus, Plaintiff's Lanham Act claims in this case rest solely on common law rights in BOGART, assuming any exist.

Plaintiff's most outlandish assertions relate to claims of conduct by Ashley. Plaintiff claims that Ashley followed a "theme" of naming products after the famous Hollywood actors and actresses. (*See* Opposition at p. 6). Yet, Plaintiff cannot cite any evidence to support this speculation of theme driven naming. Instead, Plaintiff identifies 27 unrelated and unconnected Ashley products (carefully

[4] In footnote 1 of its Opposition, Bogart acknowledges that it has abandoned the trademark registration for BOGART a trademark for use with office and institutional furniture. It is only through its pending and unissued trademark application for "Bogart" that plaintiff seeks protection for a broader array of residential furniture such as the furniture at issue in this case.

selected from a list of 650 Ashley products) and speculates that 16 of those names were based upon the last name of actors and actresses. There is no evidence that any of the products Plaintiff references were introduced or sold at the same time, or even in close proximity to one another. [redacted]

Plaintiff also offers no evidence that any of these products names were derived from or based upon famous Hollywood actors and actresses. [redacted]

Faced with testimonial evidence contradicting its claims, Plaintiff attacks the Ashley employee, Lisa Adair, responsible for picking the Bogart Ocean furniture group name. Plaintiff

---

[redacted]

criticizes Adair because she could not precisely remember the origins of the name, and lacks any written record of the origins of the Bogart Ocean name. Plaintiff ignores, however, that Ashley formally discontinued the Bogart Ocean group months before being put on notice of an issue with this group via the lawsuit.

[redacted] In short, Plaintiff has no real evidence to contradict or impugn Adair's testimony and, therefore, offers nothing more than speculation.

Plaintiff's refusal to focus on the real evidence in this case continues as it describes Ashley's advertising and selling of the Bogart Ocean group. Plaintiff implies that Ashley ran television commercials mentioning Bogart Ocean or "displaying the [Bogart Ocean] product name" and further implies that Ashley failed to produce any commercials during discovery. (*See* Opposition, p. 8, n. 9). However, Ashley did not produce any commercials during discovery because the Bogart Ocean group was never advertised in a television commercial. Again, Plaintiff must rely on speculation and conjecture in its attempt to avoid summary judgment.

At the very extreme, Plaintiff simply misrepresents the evidence. At page 10 of its opposition, Plaintiff states that Bogart Ocean products accounted for $38 million in sales [redacted]

**C. Plaintiff's Cannot Produce Any Evidence To Support Its Lanham Act Claims**

Likelihood of confusion is the "essential element" underlying Plaintiff's Lanham Act claims. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc*., 2005 U.S. Dist. LEXIS 45267, *14-15 (M.D. Fla. 2005) ("there is no evidence of any likelihood of confusion, which is an essential element."), *aff'd*, 508 F.3d 641, 648 (11th Cir. 2007). Plaintiff concedes that there is no evidence of actual confusion. (*See* Opposition, p. 22). Plaintiff also fails to offer any survey evidence to demonstrate a likelihood of confusion. Commissioning a consumer survey in Lanham Act cases is routine. *See Miller's Ale*, 2009 U.S. Dist. LEXIS 129789 (S.D. Fla. 2009), *aff'd*, 2009 U.S. Dist. LEXIS 129839 (S.D. Fla. 2009). In *Miller's*, the court observed that "the best evidence of actual confusion is consumer survey evidence." *Id.* at *58 (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931

F.2d 1519, 1525 (11th Cir. 1999). The *Miller's* court then dismissed the plaintiff's claims for a preliminary injunction based on trademark infringement because the plaintiff "fail[ed] to provide any reliable survey evidence of unreasonable customer confusion." *Id.* at *64-65; *accord Broad. Publ'ns, Inc. v. Burnup & Sims, Inc.*, 582 F. Supp. 309, 319 (S.D. Fla. 1983) (where the plaintiff provided "no evidence that a single consumer [was ever] actually confused" and "no survey evidence [was presented] such that either actual confusion or a likelihood of confusion [was] shown," the court deemed "these two particular omissions relevant" in dismissing plaintiff's Lanham Act claims).

Although Plaintiff boldly quotes *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999) as support of its lack of survey evidence, the *Frehling* decision actually undermines Plaintiff's arguments. In *Frehling*, absence of survey evidence did not create a presumption against likelihood of confusion only because the plaintiff offered alternative compelling evidence of actual consumer confusion. Thus, even though the plaintiff's evidence did not contain a survey, the court viewed it as sufficient to reverse the district court's dismissal of the plaintiff's trademark claims only because of the existence of actual confusion evidence. *See id.* at 1341 (noting evidence of confusion by a professional buyer and significance of confusion by such sophisticated and knowledgeable purchasers). Other Eleventh Circuit cases confirm the critical importance of survey evidence where no other evidence of confusion is offered. *See, e.g., Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 n.10 (11th Cir. 1982) (explaining that survey was unnecessary only where other evidence of actual confusion rendered Lanham Act violation sufficiently clear). Here, Plaintiff has presented no evidence of confusion – whether by survey or otherwise – and as such, Plaintiff's Lanham Act claims must fail.

**D. Plaintiff's Speculation And Conjecture Regarding Ashley's Intent Does Not Save Its Claims**

Plaintiff speculates, without support, that its list of 27 unrelated and unconnected Ashley product names somehow demonstrates that Ashley intentionally adopted the Bogart Ocean name in

order to copy and commercially benefit from Plaintiff's alleged trademarks. Once again, Plaintiff points to no evidence to support its assertions.

In the light most favorable to Plaintiff, the evidence reflects that some Ashley employees had some knowledge that Thomasville had previously offered a collection based on Humphrey Bogart's lifestyle. Such evidence alone, however, cannot be used to establish any wrongful intent. *See Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d at 1318 (allegations of deficient trademark clearance procedures were insufficient to demonstrate wrongful intent). Even knowledge of another's product and intent to compete with that product does not demonstrate intent to copy a trademark. *See Sensient Tech. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010) (citing *Luigino's, Inc. v. Stouffer Corp*, 170 F.3d 827 (8th Cir. 1999) and stating, "[k]nowledge of another's product and an intent to compete with that product is not … equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion.").

In order to prove bad faith that could support an inference of a likelihood of confusion, Plaintiff must show that Ashley adopted its mark with the intention of deriving a benefit from Plaintiff's trademarks. *See Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*, 2010 U.S. Dist. LEXIS 9366, at *9-10 (N.D. Ga. 2010) (granting summary judgment for defendant who had no intent to infringe, despite knowledge of competing mark) (citing *Frehling*, 192 F.3d at 1340). Significantly, in each of the cases cited by Plaintiff for the proposition that evidence of intentional copying allows for an inference of likelihood of confusion, there was clear evidence of intentional copying, which is completely lacking in this case. *See*, *e.g.*, *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1169 (11th Cir. 1991) (evidence that defendant was seeking revenge on plaintiff through deliberate copying); *Sun-Fun Prods., Inc. v. Suntan Research. & Dev., Inc.*, 656 F.2d 186, 190 (5th Cir. 1981) (testimony that witness was instructed to copy sun tan bottle with trademark at issue); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 1981 U.S. Dist. LEXIS 17062, *18-19 (N.D. Ga.

1981) (photographic evidence of initial sign bearing copy of trademark and impeachment of defendant's testimony by photograph).

The testimony of Ashley's witnesses directly counters Plaintiff's speculation concerning intent. [redacted] Given that Plaintiff has offered no conflicting evidence, Plaintiff has made no showing of bad intent for an inference of likelihood of confusion. *See Tana v. Dantanna's*, 611 F.3d at 779 (11th Cir. 2010) ("where a story of the creation of a mark is undisputed and shows an innocent origin . . . there is no intent of misappropriation contributing to a likelihood of confusion"); *HBP, Inc.*, 290 F. Supp. 2d at 1324 (summary judgment in favor of defendant was proper where plaintiff's unsupported assertions of an inference of wrongful intent were insufficient to overcome defendant's sworn statements regarding the non-infringing origin of the accused mark); *Welding Servs. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (where the story of a mark's creation showed an innocent origin, plaintiff's unsupported contention of wrongful intent failed). [redacted] In asking the Court to disregard Ashley's evidence and rule based on Plaintiff's speculation, Plaintiff is asking this Court to make an inferential leap that no reasonable jury would be allowed to make, and that courts in this jurisdiction have refused to support. *See Miller*, *supra*; *HBP, Inc.*, *supra*; *Tana*, *supra*; and *Welding*, *supra*.

**E. Plaintiff's Evidence of Trademark Strength is Weak and Inadmissible**

Plaintiff's abandonment of its registered BOGART mark proves that the BOGART mark is not very strong at all. [redacted]

[redacted] Mr. Bogart has not been designated as an expert to provide opinions testimony in this case, and there is no evidence that he would quality as an expert on any topic relevant in this action. Mr. Bogart's declaration is littered with unsupported conclusions on subjects for which he has no personal knowledge and which would require expertise that he does not have. Such self-serving and baseless testimony would be inadmissible at trial and similarly cannot be considered in opposition to summary judgment. *See* FED. R. EVID. 602 (requiring a witness to testify based on personal knowledge).

**F. Plaintiff's Lanham Act Claim For Dilution Also Fails For Lack of Evidence**

Plaintiff incorrectly asserts that Ashley has not moved for summary judgment on its dilution claim. Given that Plaintiff abandoned its registered trademark for BOGART during this litigation, has offered no admissible evidence that "Bogart" is a famous trademark, and has offered no evidence supporting its claim for trademark dilution, Ashley had reasonably assumed that Plaintiff had abandoned this claim. Just as Plaintiff has failed to offer evidence supporting all of its other claims, Plaintiff has not and cannot offer any evidence of trademark dilution. To prevail on its dilution claim, Plaintiff has the burden of proving by a preponderance of evidence the following elements: (a) that Plaintiff is the owner of a trademark that is famous; (b) that the famous mark is distinctive, either inherently or through acquired distinctiveness; (c) that Ashley is making or has made use in commerce of an identical or nearly identical trademark, (d) that Ashley used its mark after Plaintiff's mark became famous; and (e) that Ashley use of Bogart Ocean is likely to cause dilution of Plaintiff's mark. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 633 F.3d 1158, 1161

---

[redacted]

(9th Cir. 2010). Plaintiff has no evidence of these elements. Moreover, the fact that third parties own registered trademarks for BOGART while still other third parties have used the BOGART mark without Plaintiff's authorization belies any notion that Plaintiff's BOGART mark is famous or that has been diluted by Ashley's alleged conduct.

**G. Plaintiff Fails To Meet Its Burden On Its Right Of Publicity Claims**

As the Eleventh Circuit has noted, one of the purposes of the Lanham Act is to protect intellectual property owners from the misappropriation of goodwill and property rights inherent in their marks. In the case of celebrity false endorsement, the "mark" in question is precisely the persona and identity of the celebrity himself. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 n.1 (9th Cir. 1997). While Plaintiff contends that the interests protected by the Lanham Act differ from the interests protected by the right of publicity,[8] the authority is clear that a celebrity false endorsement claim under the Lanham Act protects ***exactly the same economic interest*** as a claim for misappropriation of the right of publicity under CAL. CIV. CODE § 3344. *See Waits v. Frito-Lay*, 978 F.2d 1093, 1107-11 (9th Cir. 1992) (the interest of a celebrity "in controlling the commercial exploitation of his or her identity" is "an economic interest akin to that of a trademark holder"). For example, if Plaintiff had granted Ashley a license to use the BOGART mark as part of the "Bogart Ocean" designation, surely Plaintiff would not subsequently accuse Ashley of misappropriating Humphrey Bogart's right of publicity by using the BOGART mark in the exact way contemplated under the license. Thus, in this case, Plaintiff's trademark claims and right of publicity claims are coextensive and inextricably linked together because the allegedly wrongful conduct in both instances is Ashley's use of "Bogart" in the name "Bogart Ocean."

[8] This case is not analogous to most run-of-the mill commercial "passing-off" trademark cases. Instead, Plaintiff's claims that Ashley's use of "Bogart Ocean" confused consumers about potential celebrity endorsement of their furniture by Humphrey Bogart is a separate theory that is materially identical to Plaintiff's right of publicity claim.

1. Plaintiff Improperly Applies Right Of Publicity Jurisprudence

Plaintiff exaggerates the holdings and results of the cases it cites in arguing that evidence exists for its right of publicity claim to survive. For example, Plaintiff described *Flynt v. Flynt Media Corp*., No. 2:09-cv-48-AHM-RZ, 2009 WL 125839 (C.D. Cal. Jan. 9, 2009) as "very similar" to this case, and relies on this case as demonstrating the existence of a right of publicity claim. In *Flynt*, the court issued a TRO and an Order to Show Cause enjoining Larry Flynt's nephews (and former employees) from the deliberately confusing use of the family's surname in a directly-competitive adult-film company. This decision was not based on California's right of publicity statute, but rather the potential infringement of Flynt's trademark rights. Subsequent to the TRO decision cited by Bogart, the jury in *Flynt* decided that the defendant had **not** misappropriated Larry Flynt's right of publicity under CAL. CIV. CODE § 3344 by use of the family surname. *See Flynt v. Flynt Media Corp.*, Judgment on Jury Verdict (Document No. 138), Case 2:09-cv-00048-AHM-RZ (C.D. Cal. Dec. 29, 2009). Thus, the *Flynt* decision indicates that mere use of a surname without any other reference to a specific person's persona or identity does not support a right of publicity claim. *See also Marriott*, 826 F. Supp. at 728 (no right of publicity claim for use of surname, "Marriott," because "[t]he use of the surname alone is clearly insufficient to unmistakably identify 'J.W.' [Marriott].")

Likewise, *Abdul-Jabbar v. GMC*, 85 F.3d 407 (9th Cir. 1996) is inapplicable to this action. In *Abdul-Jabbar*, the defendant used plaintiff's former full name, Lew Alcindor – an express and unequivocal reference to the identity of the plaintiff. *Abdul-Jabbar*, 85 F.3d at 414 ("The key issue is appropriation of the plaintiff's **identity**" - not merely the name) (emphasis in original). Additionally, *Abdul-Jabbar* is distinguishable because that case proceeded past summary judgment only because "a jury could reasonably conclude that **most of the factors** weigh in plaintiff's favor." *Id.* at 413 (emphasis added). In contrast, evidentiary support for Plaintiff's claim is fatally lacking.

Plaintiff also misreads the right of publicity statutes it relies upon. "Section 3344.1(n) limits the application of California's post-mortem right of publicity statute to 'cases in which the liability, damages, and other remedies arise from acts occurring directly in this state.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1147 (9th Cir. Cal. 2002) (the conjunctive listing of "liability, damages, and other remedies" strongly suggests that the plain meaning of the statute is that all elements of a Section 3344.1 claim must occur in California). "The only reasonable interpretation of [CAL. CIV. CODE § 3344.1(n)] from its plain language is that it applies only to claims that arise out of acts occurring in California." *Cairns v. Franklin Mint Co.*, 120 F. Supp. 2d 880, 883 (C.D. Cal. 2000) (refuting interpretation that only "some actionable conduct" must occur in California as "rewrit[ing] the Statute" and inconsistent with legislative history), *aff'd*, 292 F.3d 1139 (9th Cir. 2002). Thus, to the extent Plaintiff asserts any colorable claim under CAL. CIV. CODE § 3344.1 (which is denied), the language of subsection (n) limits the claim to acts and damages that occurred in California, of which there is no evidence in this case. *Id*.

2. The Georgia and Washington Right of Publicity Laws are Clearly Inapplicable

Plaintiff has failed to offer any authority that a cognizable claim for post-mortem right of publicity exists under either Washington or Georgia law.[9] Humphrey Bogart's post-mortem publicity rights are exclusive to California, and are expressly limited by statute. CAL. CIV. CODE § 3344.1(n). Furthermore, Georgia and Washington state jurisprudence also demonstrates that only California's right of publicity statute can properly apply. There is no suggestion that either Georgia or

[9] Plaintiff's interpretation of *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538 (11th Cir. 1983) is incorrect and misleading . The appellate court in *Acme Circus* did not "appl[y] substantive Florida law to determine whether there had been a misappropriation in that state," as Plaintiff asserts. Instead, the opinion in *Acme Circus* merely discussed the application of Florida law in dicta, during a lengthy choice-of-law analysis related to the descendibility and infringement of a post-mortem right of publicity, and observed that the trial court might apply Florida law if a fundamental conflict exists between the relevant California and Florida statutes. *See Acme Circus*, 711 F.2d at 1545-46.

Washington deviates from the majority rule that post-mortem rights of publicity are limited to the state in which decedents is domiciled at the time of their death.

**H. Plaintiff's Has Presented No Evidence To Support An Award Of Damages**

As discussed above, Plaintiff has failed to present any evidence to support its substantive claims. For this reason, Plaintiff is not entitled to any damages. Plaintiff is also not entitled to damages for the additional reason that Plaintiff failed to describe, identify or quantify its claimed damages during discovery. Plaintiff's Opposition merely recites the available damages remedies to a party prevailing on liability. Plaintiff has offered no evidence of its entitlement to damages in this case. The only evidence offered in support of its damages claims is the expert report of Plaintiff's damages expert, Jon Albert Levy. As detailed in Ashley's motion to exclude Levy (Dkt. No. 32), neither Plaintiff nor Levy offers any methodology or explanation concerning Plaintiff's damages calculations. Levy's report and opinions do not meet the admissibility standards of Rule 702 of the Federal Rules of Evidence, and Plaintiff has offered nothing more than speculation as to its entitlement to damages. For these reasons, Plaintiff is not entitled to any damages.

**III. CONCLUSION**

Based on the foregoing arguments and authorities, and those in Ashley's initial brief, Ashley respectfully submits that its motion for summary judgment should be granted on all counts, and this action should be dismissed with prejudice.

This the 19th day of April, 2012.

/s/ Matthew L. Jamison
Charles A. Burke, Esq. (Admitted *pro hac vice*)
Robert D. Mason, Jr. , Esq. (Admitted *pro hac vice*)
Matthew L. Jamison, Esq. (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
cburke@wcsr.com
rmason@wcsr.com
mjamison@wcsr.com

*Attorneys for Defendants Ashley Furniture Industries, Inc. (d/b/a Ashley Furniture) and Ashley Furniture HomeStore*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| BOGART, LLC, A DELAWARE LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC. (D/B/A ASHLEY FURNITURE), ASHLEY FURNITURE HOMESTORE, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:10-CV-39 (CDL) |

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on this 19th day of April, 2012 with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Additionally, an unredacted version of the foregoing has been served via email upon all attorneys of record, including:

Michael O. Crain
CRAIN LAW GROUP, LLC
297 Prince Avenue
Suite 24
Athens, GA 30601
mocrain@crainlawgroup.com

Cash Vandiver Morris
MAYER & HARPER, LLP
127 Peachtree Street, NE
Suite 1100
Atlanta, GA 30303
cmorris@mayerharper.com

/s/ Matthew L. Jamison
Matthew L. Jamison, Esq. (Ga. Bar No. 142525)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-721-3600
E-mail: mjamison@wcsr.com