IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BOGART, LLC,                         *

    Plaintiff,                   *

vs.                                  *       CASE NO. 3:10-CV-39 (CDL)

ASHLEY   FURNITURE   INDUSTRIES, *
INC. (d/b/a ASHLEY FURNITURE),
ASHLEY FURNITURE HOMESTORE, and *
DOES 1 through 10,
                                   *

    Defendants.

O R D E R

    Plaintiff Bogart, LLC ("Plaintiff") owns the intellectual
property rights, including trademark and publicity rights,
associated with the late actor Humphrey Bogart and during times
pertinent to this litigation owned the trademarks "Bogart" and
"Humphrey Bogart." Plaintiff alleges that Defendants
(collectively "Ashley"), without permission, used the "Bogart"
mark in connection with the naming, marketing, and sale of a
collection of three pieces of furniture introduced in 2008 and
branded the "Bogart Ocean" collection. Based on this alleged
wrongful use of the "Bogart" mark, Plaintiff filed the present
action, asserting federal law claims for false designation of
origin, trademark infringement, and trademark dilution under the
Lanham Act, 15 U.S.C. §§ 1114, 1125, and various related state
law claims. In support of its damages, Plaintiff relies in part

on the expert opinions of Jon Albert ("Albert") regarding the fair market value for the use of Humphrey Bogart's name.

Ashley has filed a Motion for Summary Judgment (ECF No. 33) that is currently pending before the Court. Ashley also filed a Motion to Exclude Opinions and Report of Jon Albert (ECF No. 32). As discussed below, the Court finds that Albert's opinions are sufficiently reliable to be considered in deciding Ashley's motion for summary judgment. Finding that genuine disputes exist as to the material facts, the Court denies Ashley's Motion for Summary Judgment (ECF No. 33), as explained more fully in the remainder of this order.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

The evidence, viewed in the light most favorable to the Plaintiff, reveals the following. *Id.* at 255.

## I. Plaintiff Bogart, LLC and the Thomasville Licensing Agreement

Plaintiff is an intellectual property holding company that owns the trademark and publicity rights of the deceased legendary film actor Humphrey Bogart. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.] Ex. A, Bogart Decl. ¶¶ 4-7, ECF No. 43-1; Pl.'s Resp. Ex. B, de Klerk Decl. ¶¶ 5 & 8, ECF No. 43-4. Specifically, Plaintiff presently owns the federally registered mark "HUMPHREY BOGART" for use in connection with "clothing; namely, shirts, T-shirts, sweatshirts, hats, coats and pants." Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J. Ex. K, Trademark Search Results, ECF No. 50-3. Plaintiff also owned "the U.S. federally registered trademark/word mark 'Bogart' (Serial No. 75892483) in International Class 020 (furniture)" until Plaintiff let the mark cancel on March 4, 2011. de Klerk Decl. ¶¶ 6-7. Prior to letting the "Bogart" mark cancel, Plaintiff applied for broader protection for the "Bogart" mark in April 2010 based on its actual use being broader than the definition as filed under furniture class 020. *Id.* ¶ 7. Plaintiff licensed the use of the "Bogart" trademark and Humphrey Bogart's publicity rights on

more than one hundred occasions to a wide variety of businesses. *Id.* ¶ 9.   In each of those licensing deals, third-party licensees paid for the use of Plaintiff's intellectual property through a royalty rate/percent of sales accompanied by an advance or guarantee.   *Id.* ¶¶ 10-11; Bogart Decl. ¶ 8. Plaintiff further policed unauthorized third-party use of its intellectual property that implied a connection, affiliation, or endorsement by Humphrey Bogart or Plaintiff.   de Klerk Decl. ¶ 11.

Plaintiff entered into a licensing agreement with furniture retailer Thomasville in 2001 to name and brand a line of furniture, including residential sofas and chairs, ultimately branded the "Bogart Collection" by Thomasville.   Bogart Decl. ¶ 9.   This collection aims to link the furniture with the persona and lifestyle of Humphrey Bogart.   *Id.*; Defs.' Mot. for Summ. J. Ex. F, Bogart Dep. 43:16-44:24, ECF No. 37-3.   The Thomasville Bogart Collection was marketed in the national media, including magazines and national television commercials.   Bogart Decl. ¶¶ 15-17.   Thomasville marketed the collection by employing the authorized use of the following alone and in various combinations: the name "Bogart"; photographs and images of Humphrey Bogart; the full name "Humphrey Bogart"; and references to Humphrey Bogart's life and career.   Bogart Decl. ¶ 18; Bogart Dep. 44:25-45:21, 46:14-49:12.   The furniture continues to be

sold at independently owned Thomasville stores and other independent furniture retailers. Bogart Decl. ¶¶ 13-14.

"[Under] the Thomasville Deal, Bogart, Inc. (Plaintiff's predecessor-in-interest) was to receive a royalty payment (ranging from 3% to 3.75%) based on Thomasville's net sales of the Bogart Collection, with annual guaranteed payments by Thomasville of $100,000.00." *Id*. ¶ 10. These royalties have amounted to more than five million dollars between 2003 and the end of 2011. *Id.* ¶ 12.

Plaintiff has not entered into any other licensing agreement with a furniture company. *Id*. ¶ 9; Bogart Dep. 28:7-13.

## II.  **Ashley Furniture and the Bogart Ocean Collection**

Ashley is a privately owned furniture company, selling furniture throughout the United States and internationally. Defs.' Mot. for Summ. J. Ex. A, Lebensburger Decl. ¶ 2, ECF No. 33-2. Ashley manufactures and sells residential furniture products, including the Bogart Ocean furniture collection at issue in this action, through corporate owned and independently licensed Ashley Furniture HomeStores in the United States and abroad, independent retailers, and independent internet retailers. *Id.*; Pl.'s Resp. Ex. D, Lebensburger Dep. 17:21-18:11, 147:10-148:3, 237:7-238:21, ECF No. 43-6. Ashley competes with Thomasville in the furniture industry. *Id.* at

99:22-100:6.   As discussed below, Ashley maintains that its
Bogart Ocean collection is not intended to refer to Humphrey
Bogart.

A.   Identifier Labels and Product Naming

All Ashley products have two identifier labels used to
reference and track the products for sale and delivery.
Lebensburger Decl. ¶ 4.   One label has a seven digit number
identifying the product. *Id.*  A separate label contains a non-
numeric product identifier composed of two words, the second of
which generally refers to the product's color ("non-numeric
product identifier" or "non-numeric label").  *Id.*

Ashley proffers that the first word of the non-numeric
label is "typically the name of a city, park, river, or other
publically known term." *Id.*  Plaintiff disputes this fact and
points to evidence that Ashley also uses celebrity figures' last
names and Hollywood/movie terms as the first word in the non-
numeric product identifier.  Pl.'s Resp. Ex. M, Adair Dep. Pl.'s
Ex. 6, Email from D. Sanders to gibbs.rob@stevensdirect.com
(Nov. 4, 2010), ECF No. 43-15 at 3 [hereinafter Adair Dep. Ex.
6] (listing Ashley products by the two-word label names,
including first words which are names known to be last names of
celebrities, including but not limited to Gable, Brando, Carson,
Monroe, and Presley); Pl.'s Resp. Ex. M, Adair Dep. Ex. 7, Email

from R. DeBord to tdebord511@gmail.com (Jan. 17, 2009) (including Price List), ECF Nos. 43-15 at 20 to 43-16 at 21.

Ashley does not have licenses for the use of third-party names or brands associated with its products. Lebensburger Decl. ¶ 3. Ashley also claims that it does not use celebrity endorsements to sell its products. *Id.* Plaintiff disputes that assertion and points to evidence that Ashley has used celebrity endorsements and what appear to be celebrity names to sell its products. *See, e.g.,* Pl.'s Resp. Ex. F, Adair Dep. 164:5-167:23, ECF No. 43-8 (discussing Ashley product names); Adair Dep. Ex. 6 (listing Ashley fabric names); DeAngelo Williams Ashley Furniture TV Spot, YouTube, http://www.youtube.com/watch?v=jy73lk7Boas (posted Sept. 13, 2010). In support of its contention, Plaintiff points to the following names of Ashley furniture collections: Gable-Mocha, Brando-Cocoa, Newman-Oyster, Presley-Café, and Bogart-Ocean. Adair Dep. Ex. 6.

B.   The Bogart Ocean Collection

In 2008, Ashley introduced three pieces of furniture using the non-numeric product identifier "Bogart Ocean" and the numeric product identifiers 8000029, 8000048, and 8000049. Lebensburger Decl. ¶ 5. These products were always identified with both words "Bogart" and "Ocean" and never one of those words alone. *Id.* The Bogart Ocean line was not successful and

was discontinued in 2009. *Id.* ¶ 17. Ashley asserts that its Bogart Ocean furniture was distinct to consumers from the Thomasville's Humphrey Bogart Collection because it was less expensive, of a lower quality, and a different design. *Id.* ¶¶ 15-16 (stating that the furniture collection consisted of "inexpensively overstuffed upholstery that is clearly contemporary in style and design"). Plaintiff disputes this distinction, pointing to Ashley's testimony that their upholstered furniture prices were low to medium, rather than inexpensive. Lebensburger Dep. 100:7-22 (stating that Ashley sells "bedroom sets up to $3,000, from $300 retail" and defining that price point as "low to medium-high"). Specifically, the Bogart Ocean sectional reclining sofa has a suggested retail price of $1,788.00, and the suggested retail price of the Bogart Ocean recliner chair is at least $377.98. de Klerk Decl. Ex. BB, ECF No. 43-4 at 14-16 (listing retail price of Bogart Ocean recliner at ZFurniture.Com as $377.98 and listing retail price of Bogart Ocean sectional as $1,788.00 and recliner as $578.00 at United Furniture Club).

Ashley claims that branding the Bogart Ocean collection had nothing to do with Humphrey Bogart. *See* Defs.' Mot. for Summ. J. Ex. B, Adair Decl. ¶ 5, ECF No. 33-4. Lisa Adair ("Adair"), who is charged with picking Ashley's product identifier names, branded the Bogart Ocean collection. *Id.* ¶ 2. Adair was

familiar with Thomasville's Humphrey Bogart Collection and recalled seeing some of Thomasville's marketing materials regarding that collection using the term "Bogart." Adair Dep. 171:4-5, 172:2-14.  Adair claims that although she did not keep records of the process used to choose the name of the line, she believes the name Bogart Ocean was chosen as follows:

> I have looked into the matter since this lawsuit was filed, and I believe that the word "Bogart" in the Bogart Ocean product was most likely chosen from a list of city names and was based upon the city Bogart, Ga.  It is common that the first words in Ashley product reference labels are city names.  At the time that the Bogart Ocean product was introduced into the market, approximately one-third of the product reference labels for Ashley products used the name of a city.  Also, there were other furniture collections introduced at the same Las Vegas furniture market in 2008 when Bogart Ocean was introduced and many of these used a first name based upon a city name, including Boston, Rochester, Bridgeport, Bayport, Rockingham, and Dalton.  One of these groups was named after another city in Georgia (Dalton, Ga) which proves that a list of city names in Georgia was part of the information being relied upon when product reference labels were developed for products at this furniture market.  The word "Ocean" was chosen because "Ocean" is a creative way to refer to the color blue. Bogart Ocean was blue colored upholstery.
>
> The selection of the product reference label "Bogart Ocean" had nothing to do with the actor Humphrey Bogart.

Adair Decl. ¶¶ 4-5.

Plaintiff disputes Ashley's claim that naming the collection "Bogart Ocean" had nothing to do with Humphrey Bogart, and, for purposes of the pending summary judgment

motion, it maintains that a genuine factual dispute exists as to this issue.   It argues that the evidence suggests that Ashley specifically named the Bogart Ocean collection after Humphrey Bogart to profit and trade on the success of that celebrity persona and the success of the Thomasville Humphrey Bogart Collection.   Adair equivocates as to the origin of the name and does not absolutely rule out the Humphrey Bogart connection, but she simply states that the source of the "Bogart" name was "most likely" the city of Bogart, Georgia.   *See id*. ¶ 4; Adair Dep. 76:17-24 – 78:10 ("I went back and reviewed based off this case, and I looked back to the time in which that group Bogart-Ocean was introduced . . . I believe it is from the city name, [Bogart, Georgia,] because at that time I had a third of my product introduction names that were after cities.").   Adair also stated that looking at the groups Ashley was selling at the time of this litigation, "led [her] to believe it was named after a city name.   Now, is Bogart a street?   It possibly could be a street.   I'd have to Google it and see."   Adair Dep. 169:15-170:9.   Adair also stated, "[W]hy wouldn't I have named it Humphrey Bogart? . . . I named it Bogart-Ocean."   *Id.* at 170:13-16.   Given Adair's less than definitive testimony and Plaintiff's evidence that contrary to Adair's testimony, Ashley has in fact connected other furniture lines to celebrities, the Court finds that a genuine factual dispute exists as to this

issue.  *See* Pl.'s Resp. Ex. K, Pl.'s Resp. to Defs.' Statement of Undisputed Facts ¶ 20, ECF No. 43-13 [hereinafter Pl.'s Resp. to Defs.' SUF]; Adair Dep. Ex. 6 (listing the names of furniture collections, which include names of celebrities).

C.   Use of Product Identifiers, Including "Bogart Ocean"

Ashley also argues that a non-numeric product identifier, such as "Bogart Ocean," is merely an internal reference for Ashley employees to distinguish between products and that such references are not typically seen by consumers.  Lebensburger Decl. ¶¶ 6-7.  Plaintiff, however, points to evidence showing that the product identifiers used by Ashley, including "Bogart Ocean," were not only used by Ashley employees to distinguish between the products, but were also used heavily in advertising, marketing, and display of the products and collections to consumers.  Pl.'s Resp. to Defs.' SUF ¶¶ 6 & 11.

For example, Ashley and its independent retailers use price tags, including some smaller tags attached to the actual pieces of furniture called "hangtags," and in certain stores more detailed "Works" tags, to identify products to consumers in the stores.  Pl.'s Resp. Ex. I, Byers Dep. 98:1-25, ECF No. 43-11; Lebensburger Dep. 88:23-89:4.  Ashley's corporate office forwards or makes available the tag information to the stores, instructing stores to print new updated price tags, hang tags, and works tags.  Byers Dep. 101:25-103:9; Lebensburger Dep.

85:4-11; Pl.'s Resp. Ex. H, Woodcock Dep. 55:11-56:6, 62:1-6, ECF No. 43-10.   These tags include the two word product identifier, the price, and some numerical sequences. *See, e.g.,* Byers Dep. Ex. 10, ECF No. 43-16 at 22 (price tag for "Presley-Espresso" Rocker Recliner); Byers Dep. Ex. 12, ECF No. 43-16 at 24 (works tag for the "Presley" collection).   The tags are displayed on furniture in the stores. *See, e.g.,* Byers Dep. Ex. 13, ECF No. 43-16 at 25 (photograph of in-store display of the "Presley" works tag and furniture); *see also* Byers Dep. Exs. 14-23, ECF No. 43-17 at 1-10 (tags and in-store displays of tags for other collections); Pl.'s Ex. 66, ECF No. 43-17 at 22 (same).

Other Ashley advertisements also contained non-numeric product identifiers.   Advertisements referencing Ashley's collections by name, for example "Lansbury Autumn," were also placed in newspapers in the Ashley HomeStore markets. *See, e.g.,* Woodcock Dep. 38:8-39:24, 128:2-11; Pl.'s Ex. 65, Presidents' Day Event Circular, ECF No. 43-17 at 18; Pl.'s Ex. 71, 65th Anniversary Sale Circular, ECF No. 43-17 at 44. Ashley's magazine *Trend Watch* also referenced the collections by name.   Woodcock Dep. 83:19-84:1; Pl.'s Ex. 67, Feb. 2012 *Trend Watch*, ECF No. 43-17 at 27.   When the Bogart Ocean collection was being manufactured and sold by Ashley, the collection appeared by name, "Bogart Ocean," on the ashleyfurniture.com

website.   Lebensburger Dep. 150:1-19; *see also* Lebensburger Dep. Ex. 27, ECF No. 43-17 at 13 (search results for similarly named collection "Presley").   Print advertisements also explicitly referred to the Bogart Ocean collection and furniture pieces as "Bogart-Ocean" and "Bogart Ocean."  Byers Dep. Ex. 24, "Bogart-Ocean" Advertisement, ECF No. 43-17 at 11; Byers Dep. Ex. 25, Living Den Advertisement, ECF No. 43-17 at 12 (including "Bogart Ocean Reclining Sectional").

Plaintiff has presented sufficient evidence to establish a factual dispute as to whether consumers were presented with the name of the collection, "Bogart Ocean."  It does appear to be undisputed, however, that Ashley's advertising and marketing did not use the name Humphrey, a picture or likeness of Humphrey Bogart, the voice, signature, character, or legacy of Humphrey Bogart, or the reference to Humphrey Bogart's voice, signature, character, or legacy.[1]  It is also undisputed that Ashley did not use the words "endorsed," "sponsored," "authorized," or "approved," or other similar words in conjunction with selling its Bogart Ocean furniture.

---

[1] Although Plaintiff stated that it was disputing these facts to the extent of Ashley's use of Humphrey Bogart's character and legacy, Pl.'s Resp. to SUF ¶ 26, this fact is undisputed because Plaintiff did not point to any evidence of Ashley's alleged use of Humphrey Bogart's character and legacy.  *See* M.D. Ga. R. 56 ("All material fact contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate.").

### III. Consumer Confusion and the Bogart Ocean Furniture

As to consumer confusion, the present record does not contain any evidence of *actual* consumer confusion between Ashley's Bogart Ocean collection and Plaintiff's "Bogart" mark, the publicity rights of Humphrey Bogart, or the Thomasville Humphrey Bogart Collection.  Defs.' Mot. for Summ. J. Ex. E, de Klerk Dep. 69:25-70:21, ECF No. 37-2.  Further, it is undisputed that Plaintiff has not conducted a consumer survey regarding the likelihood of confusion between "Bogart Ocean" and Plaintiff's trademarks.  *Id.*

DISCUSSION

### I.   Lanham Act Claims

Plaintiff brings claims under the Lanham Act for: (1) false designation of origin under 15 U.S.C. § 1125(a), Lanham Act § 43(a), which establishes a cause of action for infringement of qualifying unregistered trademarks; (2) likelihood of confusion under 15 U.S.C. § 1114, Lanham Act § 32(a), establishing a cause of action for infringement of registered trademarks; and (3) dilution under 15 U.S.C. § 1125(c), Lanham Act § 43(c).  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Plaintiff's main allegation in support of its Lanham Act claims is that "Bogart" is a registered and a common law trade name in which it has trademark rights and that Ashley is unlawfully infringing on those rights by using the term "Bogart" in

connection with its line of furniture.  Ashley contends that all of Plaintiff's Lanham Act claims fail because Plaintiff cannot show that consumers were likely to confuse Plaintiff's mark and/or name with its Bogart Ocean collection.

To prevail on a false designation of origin claim under the Lanham Act, a plaintiff must establish that (1) it had trademark rights in the mark or name at issue and (2) the defendant has adopted a mark that is confusingly similar to the plaintiff's mark such that a likelihood of consumer confusion existed "as to the origin, sponsorship, or approval of [the] goods."  15 U.S.C. § 1125(a)(1); *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  "The factors relevant to establishing [a likelihood of confusion with respect to false designation of origin under 15 U.S.C. § 1125(a)] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."  *Tana*, 611 F.3d at 773 n.5 (alteration in original) (internal quotation marks omitted). Ashley does not challenge Plaintiff's ownership of the "Bogart" mark, but does challenge its establishment of secondary meaning as required for Plaintiff's claims of infringement and false designation of origin.[2]  Thus, the only remaining issue as to

---

[2] Ashley analyzes the establishment of secondary meaning under its likelihood of confusion analysis.  Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. 11 n.4, ECF No. 37.  To the extent secondary meaning is required for trademark protection as the first element of

these claims is whether there is a likelihood of confusion between Plaintiff's mark and Ashley's use of "Bogart" in the name of its furniture collection Bogart Ocean. The Court will address Ashley's challenge to Plaintiff's false designation of origin and trademark infringement claims together and then separately address Ashley's challenge to Plaintiff's dilution claim.

> A. <u>False Designation of Origin and Trademark Infringement: Likelihood of Confusion</u>

Likelihood of confusion is generally a question of fact, but it can be decided as a matter of law. *Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000). The Court applies the following seven factors to evaluate whether there is a likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*Id.* Plaintiff claims that Ashley's use of "Bogart" in naming its furniture line "Bogart Ocean" creates a sufficient likelihood of confusion with Plaintiff's "Bogart" mark. As discussed below, the Court finds that there is sufficient

---

Plaintiff's Lanham Act claims, the Court's analysis of secondary meaning under the likelihood of confusion section applies.

evidence of a likelihood of confusion between Plaintiff's mark and Ashley's use of the term "Bogart" in branding its Bogart Ocean furniture. Consequently, Defendants are not entitled to summary judgment on these claims.

### 1.   *Strength of the Mark*

In evaluating the type of mark claimed by Plaintiff, the Court must classify the mark as strong or weak to determine to what extent the mark is protected. *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). "The stronger the mark, the greater the scope" of trademark protection to which it is entitled. *Id.* "The weaker the mark, the less likelihood of confusion." *Tana*, 611 F.3d at 776.

There are four types of marks: generic, descriptive, suggestive, and arbitrary. *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985) (citation omitted). "Descriptive marks describe a characteristic or quality of an article or service." *Frehling*, 192 F.3d at 1335 (citation omitted). Plaintiff's claimed "Bogart" mark is descriptive because it is a surname. *See Tana*, 611 F.3d at 774 ("Names—both surnames and first names—are regarded as descriptive terms . . .") (internal quotation marks omitted). Descriptive marks are distinctive only when they have acquired secondary meaning. *Laite*, 756 F.2d at 1540.

It is undisputed that Plaintiff had the registered mark "Bogart" until Plaintiff allowed it to lapse in March 2011. de Klerk Decl. ¶¶ 6-7. Registration provides the plaintiff with the presumption that the mark is "not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning. This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986) (internal quotation marks and citations omitted). *See also* 15 U.S.C. § 1115(a); *Frehling*, 192 F.3d at 1336 (explaining that registration increases the strength of the mark). Accordingly, prior to the cancellation of the mark, Plaintiff's mark is entitled to a presumption of distinctiveness that Ashley has the burden of rebutting. *See, e.g., Scientific Applications, Inc. v. Energy Conservation Corp.*, 436 F. Supp. 354, 360 (N.D. Ga. 1977).

As stated above, because the "Bogart" mark is descriptive, its strength, meaning its distinctiveness, also depends on whether "Bogart" has acquired secondary meaning. *Tana*, 611 F.3d at 776. "Secondary meaning is the connection in the consumer's mind between the mark and the product's producer." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003). To assess secondary meaning, the Court assesses four factors: "(1) the length and nature of the name's use, (2) the

nature and extent of advertising and promotion of the name, (3) the efforts of the proprietor to promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the proprietor's product or service." *Tana,* 611 F.3d at 776 (internal quotation marks omitted). The evidence shows that Plaintiff has used the term "Bogart" in conjunction with the Thomasville Furniture licensing deal and Thomasville's Humphrey Bogart Collection since 2001. Bogart Decl. ¶¶ 9, 13-14. Thomasville engaged in a costly, national advertising campaign, including magazine ads, television commercials, and in-store point of sale materials using the Bogart name and branding of its furniture line. Bogart Decl. ¶¶ 15-18; Bogart Dep. 44:25-45:21, 46:14-49:12.

Ashley argues that the Bogart mark is widely used by third parties. In assessing unauthorized third-party usage, which can decrease the strength of a mark, "[t]he proper inquiry is whether the unauthorized third-party uses significantly diminish the public's perception that the mark identifies items connected with the owner of the mark." *Laite,* 756 F.2d at 1546 n.27. The only federally registered mark Ashley references as evidence of third-party use is the BOGART mark (U.S. Registration No. 1423521) owned by Jacques Bogart International, B.V. and used on men's colognes. Defs.' Mem. of Law in Supp. of Defs.' Mot. for

Summ. J. 15 n.6, ECF No. 37 [hereinafter Defs.' Mem.]. Ashley presents no evidence of actual third-party usage of the "Bogart" mark that has diminished the public perception of the owner of the Bogart mark. Rather, Ashley makes generalizations in support of third party use, such as: many celebrities have the name Bogart; Bogart is used in the names of public venues and private businesses; and Bogart is a common term. The Court finds the evidence establishes a genuine factual dispute as to whether the mark is sufficiently distinctive to warrant trademark protection.

> ### 2. Similarity Between Plaintiff's Mark and Ashley's Use of "Bogart"

A factor increasing the likelihood of confusion is a high degree of similarity of the marks at issue; the more similar the marks, "the more likely reasonable consumers will mistake the source of the product that each mark represents." *Frehling,* 192 F.3d at 1337. The Court compares the Bogart mark with Ashley's use of "Bogart Ocean" and "considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Id*.

Ashley contends that its use of the "Bogart" term is markedly different than the use by Plaintiff and Thomasville because Ashley used the term accompanied by the name, logo, and trademarks of Ashley, never used "Bogart" without the modifier

"Ocean" (Bogart Ocean), and never used the full name "Humphrey Bogart" or "Bogart, LLC." The Court finds that Plaintiff's Bogart mark is very similar to Ashley's Bogart Ocean trade name. The focus of the marks is the term "Bogart," and even Ashley identifies the word "Ocean" as merely the color name of the collection. The addition of "Ocean" does not create a significant variation in the marks. *See id.* (stating that where a mark entirely encompasses the plaintiff's mark and merely adds a descriptive adjective to the dominant portion of the mark, "the overall impression the marks create is one of striking similarity-they are strikingly similar in sight, sound, and meaning."). For the same reasons, any addition of "Thomasville" or "Humphrey" in Thomasville's advertising of the Humphrey Bogart Collection does not alter the overall impression of the mark. *See id.* ("[A] mark may be surrounded by additional words of lesser importance and not have its strength diluted.").

Ashley also asserts that its usage was distinctly different because it never used "Bogart Ocean" with a reference to the image, persona, or reputation of Humphrey Bogart like Thomasville did with its Humphrey Bogart Collection. While this fact may reduce the likelihood of confusion and be a factor considered by the fact finder in its ultimate verdict, the Court finds that this evidence does not warrant deciding this issue as a matter of law.

The Court further observes that the manner in which both "Bogart" and "Bogart Ocean" are used is similar. Ashley uses "Bogart Ocean" in branding and advertising home furniture like Plaintiff uses "Bogart" in branding and advertising home furniture by its licensing agreement with Thomasville. Just as the *Frehling* court concluded, this Court concludes that "the instant comparison reveals the sort of high degree of similarity between marks that portends a likelihood of consumer confusion." *Id.* Therefore, this factor weighs in favor of finding a sufficient likelihood of confusion for summary judgment purposes.

### 3. *Similarity of Products and Services*

The similarity of a product may lead a consumer to conclude that a single producer is the source of products or that the goods are endorsed by or emanate from a single source, thus resulting in a likelihood of consumer confusion. *Frehling,* 192 F.3d at 1338. There is no dispute that both parties have used the term "Bogart" in branding and selling home furniture directed at a similar set of consumers.

Ashley first argues that this factor weighs against a likelihood of confusion because "[t]he price, design and style of these two products, [Ashley's Bogart Ocean furniture and Thomasville's Humphrey Bogart Collection furniture,] and the way they were marked, could not have been more different." Defs.'

Mem. 19.  *See also* Lebensburger Decl. ¶ 16 (stating that Thomasville's collection was "composed of high-end and expensive wood furniture with a highly customized and unique design . . . In contrast, the Bogart Ocean sofas . . . were inexpensively overstuffed upholstery that is clearly contemporary in style and design."). Yet, this is the same argument rejected by the Eleventh Circuit in *Frehling* where the defendants sought to distinguish between "custom-made," "more expensive" furniture and less expensive "ready-to-assemble" furniture. *Frehling*, 192 F.3d at 1338. "[T]he test is not whether, the goods could be distinguished, . . . but whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Id.* (citing *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir. 1985)). Just as in *Frehling*, here a reasonable consumer could attribute both products to the same source or endorser because both collections are furniture, including sofas, for the home. Additionally, both lines of furniture are marketed with the term "Bogart." Therefore, it is not unreasonable for a consumer to conclude that because both products are home furniture with the term "Bogart" in the collection name, the two products are produced or endorsed by the same source. Moreover, the fact that the furniture composition and price points may differ is relevant, but this

fact is not dispositive in ruling out a likelihood of confusion, particularly at the summary judgment stage. *See id.* ("While the compositional differences matter, they are not dispositive; we focus, rather, on the reasonable belief of the average consumer as to what the likely source of the goods was.").

### 4. Similarity of Sales Methods

Similarities of the parties' retail outlets and customers increase the possibility of a likelihood of consumer confusion. *Id.* at 1339. "This factor takes into consideration where, how, and to whom the parties' products are sold." *Id.* The parties need not be in direct competition for this factor to indicate a likelihood of confusion. *Id.*

Ashley sells residential furniture products, including the Bogart Ocean collection, through corporate owned and independently licensed Ashley Furniture HomeStores in the United States and abroad, independent retailers, and independent internet retailers. Lebensburger Dep. 17:21-18:11, 147:10-148:3, 237:7-238:21. Similarly, Thomasville's Humphrey Bogart Collection furniture is sold at independently owned Thomasville stores and other independent furniture retailers. Bogart Decl. ¶¶ 13-14. Ashley's 30(b)(6) designee admitted that Ashley is a competitor with Thomasville in the furniture industry. Lebensburger Dep. 99:22-100:6. Because of these similarities, it appears clear that the parties engage in similar sales

methods in the same channels of trade.  Thus, this factor weighs in favor of finding a likelihood of consumer confusion for summary judgment purposes.

    5.  *Similarity of Advertising Media*

    An examination of each party's advertising reveals further similarities.  *Frehling*, 192 F.3d at 1339.  Those similarities include internet marketing, point-of-sale signage, and print media.  The primary difference between their advertising strategies appears to be that Thomasville advertised using a national television commercial campaign pursuant to Plaintiff's licensing agreement with Thomasville, but Ashley did not advertise Bogart Ocean in that manner.  The Court finds that sufficient similarities in their advertising strategies constitute another factor that supports a finding of likelihood of confusion for summary judgment purposes.  *Id.* at 1340.

    6.  *Defendant's Intent*

    "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."  *Frehling*, 192 F.3d at 1340.  Ashley claims that "undisputed evidence shows Ashley's specific intent NOT to use the full name, image, likeness and persona of Humphrey Bogart."  Defs.' Mem. 20.  Further, Ashley states that it commonly used city

names, Bogart, Georgia is a city, and thus Bogart, Georgia is possibly the origin of the collection name.   Adair Dep. 76:17–78:10, 169:15-170:16.   Plaintiff challenges Ashley's assertion that the Bogart Ocean collection was named after Bogart, Georgia based on (1) the branding employee's deposition testimony indicating that she only learned Bogart was a city in Georgia after she researched the term "Bogart" after this lawsuit was filed and (2) by pointing to ample furniture collections having celebrity surnames as their identifier before the color term. *Id.*; Adair Dep. Ex. 6.   Although the Court finds that a genuine factual dispute exists as to this issue, the Court treats it as a neutral factor in determining whether the likelihood of confusion exists for summary judgment purposes.

7. *Actual Confusion*

The present record contains no evidence of actual confusion.   Although evidence of actual consumer confusion is the most persuasive evidence in evaluating likelihood of confusion, *Tana*, 611 F.3d at 779, "evidence [of actual confusion] is not a prerequisite," *Frehling*, 192 F.3d at 1340. The seven likelihood of confusion factors are to be balanced. *Id.* at 1342.   While Ashley has demonstrated that Plaintiff failed to conduct any consumer surveys or otherwise demonstrate actual confusion, the Court observes that "[t]his Circuit . . . has moved away from relying on survey evidence.   Thus, the

26

failure to adduce such evidence is not damaging to the Plaintiff's case. . . . [T]he lack of survey evidence [is] not dispositive." *Frehling*, 192 F.3d at 1341 n.5 (internal citation omitted).

"The role of the court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof of a likelihood of confusion to warrant a trial of the issue." *Tana*, 611 F.3d at 775 n.7. Weighing the relevant factors, the Court finds that Plaintiff has shown that a reasonable consumer could be confused by the two marks and, therefore, a reasonable jury could find that the Bogart mark and Bogart Ocean product identifier are confusingly similar. The Court concludes that a genuine factual dispute exists as to the likelihood of confusion between Plaintiff's mark and Ashley's use of "Bogart" in its Bogart Ocean collection, precluding summary judgment and warranting a trial of the issue. *Id*. In sum, Ashley is not entitled to summary judgment on Plaintiff's false designation of origin and trademark infringement claims.

B.   Dilution Claim

Plaintiff's trademark dilution claim brought under 15 U.S.C. § 1125(c), does not rely on the likelihood of confusion analysis. Although Ashley in its Motion for Summary Judgment claims to be seeking summary judgment as to all claims,

Plaintiff correctly points out that Ashley does not raise any argument as to Plaintiff's trademark dilution claim. In its Reply Brief in Support of Defendants' Motion for Summary Judgment, Ashley attempts to raise arguments for the first time seeking summary judgment on this claim. Reply Br. in Supp. of Defs.' Mot. for Summ. J. 11-12, ECF No. 52. Arguments raised for the first time in a reply brief are not properly before the Court. *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984); *cf. Najjar v. Ashcroft*, 257 F.3d 1262, 1283 n.12 (11th Cir. 2001) (an issue not raised in a party's initial brief is deemed abandoned). Therefore, the Court denies summary judgment as to Plaintiff's claim for trademark dilution.

## II.  Right of Publicity State Law Claims

Plaintiff also brings claims for misappropriation of the right of publicity under Georgia, California, and Washington state laws, alleging that Ashley's use of "Bogart" and Humphrey Bogart's celebrity identity without Plaintiff's consent within the states of Georgia, California, and Washington has caused Plaintiff to suffer injury. Compl. ¶¶ 40-61, ECF No. 1. Ashley seeks summary judgment as to these state law claims. Finding that genuine factual disputes exist as to these claims, the Court denies Ashley's motion for summary judgment as to these claims.

The Court must first determine the applicable law for evaluating Plaintiff's misappropriation of publicity rights claims. The parties' briefing is deficient on this issue. Nevertheless, because the Court finds that no significant differences exist between Georgia law on this issue and the law of California or Washington, the Court applies Georgia law.

Preliminarily, the Court rejects Ashley's contention that Georgia common law does not recognize a post-mortem right of publicity for anyone not a resident of Georgia or domiciled in the state at the time of his or her death. Contrary to Ashley's interpretation of *Martin Luther King, Jr., Center for Social Change, Inc. v. American Heritage Products, Inc.*, 250 Ga. 135, 296 S.E.2d 697 (1982), the Georgia Supreme Court, addressing questions certified from the Eleventh Circuit Court of Appeals, held "the right of publicity survives the death of its owner and is inheritable and devisable." *Id.* at 145, 296 S.E.2d at 705. It did not address whether the owner must be domiciled in the state of Georgia at the time of death. *Id.* Ashley has pointed to no other legal authority in support of its argument.

Although the claims for misappropriation of publicity rights have a statutory origin in California and Washington, the Georgia common law cause of action appears to have substantially similar elements as those statutory causes of action. *See id.* at 143, 296 S.E.2d at 704*;* Wash Rev. Code. § 63.60.050; Cal.

Civ. Code § 3344.1(a)(1).   While under Georgia law the misappropriation must be "for the financial gain of the appropriator," *Martin Luther King, Jr., Center*, 250 Ga. at 143, 296 S.E.2d at 704, which does not appear to be a prerequisite under California or Washington law, the Court finds that this distinction is immaterial for purposes of deciding the presently pending summary judgment motion.   Notwithstanding any minor differences that may exist between the laws of Georgia, California, and Washington, it is clear that genuine factual disputes, including whether the alleged misappropriation was done for financial gain, exist as to Plaintiff's misappropriation of publicity rights claims, precluding summary judgment.[3]

The Court also rejects Ashley's contention that a misappropriation of publicity right state law claim is duplicative of Plaintiff's Lanham Act claim for false designation of origin under 15 U.S.C. § 1125(a).   These claims have separate elements and distinct underlying public policy goals.   Under Georgia law, Plaintiff is not required to put forth evidence of likelihood of consumer confusion as it is required to do under the Lanham Act, 15 U.S.C. § 1125(a).   *See Cabaniss v. Hipsley*, 114 Ga. App. 367, 377, 151 S.E.2d 496, 503

---

[3] The parties should be prepared at the final pretrial conference to address precisely how the jury should be charged on the essential elements of the state law publicity rights claims, including whether the law is different depending on where the conduct occurred.

(1966) (defining the tort as "consist[ing] of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness."); *accord* Wash Rev. Code. § 63.60.050; Cal. Civ. Code § 3344.1(a)(1). Further, right of publicity claims under state law are uniquely grounded in an individual's right to privacy and/or an individual's property right to control third-party use of their persona. *Id.* at 377, 151 S.E.2d at 504 ("[T]he main distinction between this aspect of privacy and the other three [privacy torts in Georgia] is the distinction between causes of action involving injury to feelings, sensibilities or reputation and those involving an appropriation of rights in the nature of property rights for commercial exploitation."); *see also Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446-47 (11th Cir. 1998) (discussing the difference between publicity and privacy rights). Notably, the Eleventh Circuit has permitted such state law claims to proceed simultaneously with claims under the Lanham Act for trademark infringement. *E.g.*, *Tana*, 611 F.3d at 772, 783 (evaluating both plaintiff's appropriation of likeness claim under Georgia law and plaintiff's trademark infringement claim under the Lanham Act). Noting that damages may ultimately be duplicative as to the state law and Lanham Act claims, an issue to be determined at a later date, the Court finds unpersuasive Ashley's argument

that summary judgment should be granted on Plaintiff's publicity rights claim because it is duplicative of the Lanham Act claims.

Ashley also argues that it made no use of the name, likeness, or persona of Humphrey Bogart such that a claim for misappropriation of publicity rights could have occurred. The Court finds that the present record demonstrates a disputed question of material fact as to whether the term "Bogart" as used in Ashley's Bogart Ocean collection was derived from Humphrey Bogart's name and/or created an association with Humphrey Bogart.

Ashley's Motion for Summary Judgment as to Plaintiff's state law misappropriation of right of publicity claims is denied.

## III. Other Georgia State Law Claims

Ashley also seeks summary judgment as to Plaintiff's deceptive trade practices claim under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 to -375, and unfair competition claim under Georgia law, O.C.G.A. § 23-2-55. Ashley's only argument for summary judgment on these claims is that if Plaintiff's Lanham Act claims fail based on the likelihood of confusion analysis, the state law claims should also be dismissed. The Court, however, has found that a triable issue exists as to the likelihood of confusion underlying

Plaintiff's Lanham Act claims for false designation of origin and trademark infringement. *See supra* DISCUSSION I.A.

"Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001); *see also Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 839 (11th Cir. 1983) ("If we determine that the district court decided the Lanham Act count properly, we will also affirm its decision on the Georgia deceptive trade practices and unfair competition counts."). Therefore, based on the Court's analysis of likelihood of confusion, *supra* DISCUSSION I.A., the Court denies Ashley's Motion for Summary Judgment as to Plaintiff's claims for unfair competition and deceptive trade practices under Georgia law.

## IV. Damages & Ashley's Motion to Exclude (ECF No. 32)

Ashley's remaining argument is that no admissible evidence has been presented to show that Plaintiff has suffered any damages caused by Ashley's conduct, and, therefore, Ashley should be granted summary judgment as to any claim for damages. This argument is tied directly to its Motion to Exclude Opinions & Report of Jon Albert, ECF No. 32.

During discovery in this action, Plaintiff designated Jon Albert ("Albert") as an expert in celebrity licensing and

endorsements valuation, and he filed his Expert Report in compliance with Federal Rule of Civil Procedure 26(a)(2)(B). *See* Pl.'s Resp. Ex. O, Expert Report of Jon Albert, ECF No. 43-19 [hereinafter Albert Report]. Ashley maintains that Albert's testimony must be excluded under Federal Rule of Evidence 702 and *Daubert*.

A.    Federal Rule of Evidence 702 and the *Daubert* Standard

Federal Rule of Evidence 702 governs the admission of expert testimony in federal court, and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court must act as a gatekeeper to ensure the reliability and relevancy of expert testimony; for an expert's testimony to be admitted, the proffered expert must be qualified to render a reliable opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 152 (1999); *Daubert*

*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). The trial court must "'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

In determining the admissibility of expert testimony under Rule 702, the Court must engage in a "rigorous three-part inquiry" assessing whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)). "The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Id.*

Rule 702 provides that a witness "may be qualified as an expert by virtue of his or her 'knowledge, skill, experience, training, or education.'" *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1342 (11th Cir. 2003) (quoting

Fed. R. Evid. 702). Accordingly, in determining whether a proffered expert is "qualified" to offer an opinion, courts generally look to evidence of the witness's education and experience and ask whether the subject matter of the witness's proposed testimony is "sufficiently within [the expert's] expertise." *E.g., Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). It is beyond dispute that experience in a field may provide a sufficient foundation for expert testimony. *Frazier*, 387 F.3d at 1260-61.

To ascertain whether proposed expert testimony is "reliable," courts generally consider several factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Kilpatrick*, 613 F.3d at 1335 (citing *Daubert*, 509 U.S. at 593-94). "This list, however, is not exhaustive, and district courts have substantial discretion in deciding how to test an expert's reliability." *Hendrix*, 609 F.3d at 1194 (internal quotation marks omitted). The district court's primary focus should be "'solely on principles and methodology, not on the conclusions that they generate.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).

For an expert's testimony to "assist" the trier of fact, "the evidence must have a valid scientific connection to the disputed facts in the case." *Id.* A court "may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." *Cook ex rel. Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (internal quotation marks omitted). Also, expert testimony is generally only admissible "if it concerns matters that are beyond the understanding of the average lay person." *Id.* (internal quotation marks omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* (internal quotation marks omitted).

B.   Analysis of Jon Albert's Opinions

Plaintiff intends to offer at trial testimony of Albert, a celebrity talent and music rights packager, concerning the fair market value for the use of the name of Humphrey Bogart, specifically "Bogart" as used by Ashley Furniture to brand its Bogart Ocean furniture products. Albert Report 2. Based on Albert's review of the case, knowledge, training, skill, and experience as a celebrity packager, Albert values Ashley's use of Humphrey Bogart's name "Bogart" at a royalty rate of guaranteed one million dollars per year as a guarantee against just over three percent of sales. Pl.'s Resp. in Opp'n to

Defs.' Mot. to Exclude Ops. & Report fo [sic] Jon Albert Ex. Q Part 1, Albert Dep. 99:21-24, ECF No. 44-3.

Ashley does not challenge the qualifications of Albert, who has worked in the celebrity talent and music rights packaging business for thirty-five years negotiating agreements between advertisers and celebrities both living and via their estates and advising advertisers as to the cost of acquiring the name, likeness, or services of celebrities for use in advertising, endorsement, commercials, or other promotional ventures. Albert Report 1. Ashley asserts a *Daubert* challenge to Albert's testimony, asserting that: (1) Albert fails to employ a recognized method in reaching his conclusions and his conclusions are unverifiable; (2) Albert does not explain how he reached his opinion, so no one else can test the conclusion; and (3) Albert's opinions are unreliable and therefore not helpful to a jury.

### 1. *Albert's Method and Evaluation*

Albert asserted that scientific or formulaic "methods" do not work in the entertainment industry, but valuations of the use of a celebrity name and/or persona are based on what a person is worth based on their talent, perception in the entertainment industry, and precedential agreements. Pl.'s Resp. to Mot. to Exclude Ex. Q Part 2, Albert Dep. 40:8-22, 43:2-10, ECF No. 44-2. To conduct such valuations, Albert

relies on his experience and heavily on precedent as to what is paid to a particular talent, in this case the owner of Humphrey Bogart's publicity rights, and conducts a hypothetical licensing negotiation. *Id.* at 53:22-54:8. Albert based his opinion on his experience working in the field of celebrity endorsement negotiations and packing for thirty-five years. Pl.'s Resp. to Mot. to Exclude Ex. Q Part 3, Albert Dep. 73:19-74:16, ECF No. 44-3.

In reaching his conclusion as to the reasonable value of what it would have cost Ashley to purchase the rights to use "Bogart" as part of Humphrey Bogart's name and celebrity persona, Albert drew on thousands of licensing agreements, including the general history of Plaintiff's agreements licensing the "Bogart" mark, and Plaintiff's agreement with Thomasville Furniture. *Id.* at 59:1-60:6, ECF Nos. 44-2 & 44-3. Drawing on these agreements, he found the Thomasville agreement "precedential" and also conducted a hypothetical royalty negotiation between Ashley and Plaintiff to reach his conclusion as to the fair market value Ashley would have paid for rights to the "Bogart" mark. *Id.* at 51:1-8, 59:25-60:6, ECF Nos. 44-2 & 44-3. In this hypothetical negotiation, Albert considered what Ashley would have paid to use the "Bogart" mark and the amount of usage ("how much media they buy"), basing his analysis on full and complete use in print, internet, and point of sale

materials.  *Id.* at 64:15-66:5, ECF No. 44-3.  He further explained that whether the full name "Humphrey Bogart" was used or just the "Bogart" mark, the value would be the same in negotiations because the name Bogart is the key part in the negotiations to which Ashley hypothetically would be seeking rights.  *Id.* at 68:3-22.  Additionally, his negotiations took into account that in valuing the use of a celebrity name like Bogart, one cannot separate "Bogart" from film and his celebrity persona.  *Id.* at 73:19-74:16.

###### 2.   *Analysis of Ashley's Challenge*

Ashley asserts that Albert's means of reaching a valuation of the cost for Ashley to use the "Bogart" mark and Humphrey Bogart's name, which it contests it did not do, is problematic because it does not entail any scientific calculus, factors to be reviewed, or a method that can be repeated and tested.  In response, Plaintiff contends that Albert's methodology involved using his experience in celebrity licensing and endorsement deals and evaluating comparable uses, including the most similar deal available to him, the Thomasville license for the use of the "Humphrey Bogart" mark.

The Court rejects Ashley's inflexible approach which would never permit expert testimony on the issue of damages in cases such as the present one.  As noted by the Courts, in assessing the second *Daubert* prong, this inquiry is a "flexible one" and

no "definitive checklist or test" exists. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (internal quotation marks omitted). Experience in a field may serve as sufficient foundation for expert testimony. *Frazier,* 387 F.3d at 1260-61. Here, Albert seeks to testify based on his more than thirty years of experience in celebrity licensing valuation to establish the fair market value Ashley would have had to pay Plaintiff for a license to use the "Bogart" mark. Moreover, he points to concrete evidence supporting his opinions, including evidence of how others in the market place have placed a value on these intellectual property rights. He does not simply pull a figure out of the air. The Court finds his opinions sufficiently reliable to be admitted. Moreover, while not directly applicable to this situation, the Court finds that the approach outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), for patent cases is consistent with the approach taken here. The Court rejects Ashley's contention to the contrary.

Ashley also asserts that Albert's testimony would not assist the trier of fact. It is clear that evaluating the value of such intellectual property rights is outside the average lay person's knowledge and understanding. An expert in this area would certainly aid the trier of fact in evaluating these issues.

For all of these reasons, Ashley's motion to exclude Albert's testimony (ECF No. 32) is denied.

C.    Summary Judgment as to Damages Claims

Having rejected Ashley's motion to exclude the testimony of Plaintiff's damages expert, the Court likewise must reject Ashley's contention that no evidence exists in the record supporting Plaintiff's claim for damages.  The Court finds that genuine factual disputes exist on the issue of compensatory damages.  Accordingly, Ashley's motion for summary judgment on this ground is denied.

Ashley also argues that it is entitled to summary judgment as to punitive and exemplary damages.  Punitive damages are generally reserved for consideration by a jury.  *E.g.,* *Christopher Inv. Props., Inc. v. Cox*, 219 Ga. App. 440, 444, 465 S.E.2d 680, 684 (1995), *overruled on other grounds by Amend v. 485 Prop.*, 280 Ga. 327, 627 S.E.2d 565 (2006).  The Court has concluded that there are genuine factual disputes as to Plaintiff's Lanham Act and state law claims, including whether Ashley purposefully chose the name Bogart Ocean because of its connection to the Thomasville Bogart Collection.  Accordingly, the Court concludes that based on the analysis of the substantive claims, genuine issues of material fact exist as to Ashley's intent and willfulness in using the term "Bogart" for the purposes of punitive damages.  For these reasons, the Court

likewise denies Ashley's motion for summary judgment as to Plaintiff's claim for punitive damages.

CONCLUSION

For the forgoing reasons, the Court denies Ashley's Motion for Summary Judgment (ECF No. 33) and Ashley's Motion to Exclude Plaintiff's expert Jon Albert (ECF No. 32).

IT IS SO ORDERED, this 28th day of August, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE